[Civ. No. 28039. Second Dist., Div. Three. July 11, 1967.]

EUGENE R. SANDERS et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

Lemaire & Mohi, Lemaire, Mohi & Morales and Cy H. Lemaire for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones and Marcus E. Crahan, Jr., Assistant City Attorneys, for Defendants and Respondents.

SHINN, J.*—The proceeding is by city employees seeking a writ of mandate commanding the City of Los Angeles, and certain of its departments, to fix the salaries and wages of city employees for the fiscal year 1962-63, which the defendants had failed to do. It is a representative proceeding on behalf of all city employees. Issue was joined, trial was had and a writ of mandate was issued and served. The defendants filed their return. On the return date a hearing was had in which all parties joined. The purport of the return was that the defendant had fully complied with the writ and they sought a ruling to that effect, and discharge of the writ. Plaintiffs appeared in opposition.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Upon the oral motion of plaintiff that the court rule that defendants had not complied with the writ the matter was deemed to be in issue and the court proceeded with a hearing in which evidence was introduced by the parties. At the conclusion of the hearing the court made an order determining that the defendants had fully complied and discharging the writ. The appeal is from that order.

The authority and duty of the defendants to fix salaries and wages (to be referred to as salaries) is stated in section 425 of article XXXI of the city charter reading: ''Sec. 425. In fixing the compensation to be paid to persons in the city's employ, the Council and every other authority authorized to fix salaries or wages, shall, in each instance, provide a salary or wage at least equal to the prevailing salary or wage for the same quality of service rendered to private persons, firms or corporations under similar employment, in case such prevailing salary or wage can be ascertained.''

Section 5.1 of Ordinance No. 89,100, as amended by Ordinance No. 107,047, provides in part as follows: ''(b) . . . The City Administrative Officer is hereby directed to make a salary survey at least once each year and to present his report on such salary survey to the City Council on or before April 10 of each year by filing the same with the City Clerk. Such report shall contain summary findings on prevailing salaries or wages of positions in a representative sample of business establishments in the City of Los Angeles metropolitan area and the positions in other governmental agencies which have positions comparable to those in the city service, together with recommendations, if any, for changes in salary schedules applicable to all classes of positions in the city service.'' Under the same ordinance it is the duty of the council to fix the salaries applicable to all classes of positions in the city service, to be effective on July 1 of each year.

In the trial of the proceeding in mandate the court found that the defendant had failed to fix salaries as required by the Charter and ordinances for the year 1962-63 and issued its writ commanding them to perform that duty.

In order to provide a basis for comparison of city salaries with comparable salaries in industry it was necessary each year to make an extensive survey of jobs and salaries in industry. It had long been the practice of the city to make such a survey jointly with the County of Los Angeles, the Los Angeles City Schools and the Los Angeles Housing Authority and a survey was made in this manner early in 1962.

As required by ordinance the survey was made for the city by the City Administrative Officer. In accordance with the information thus obtained and duly reported to it, the council adopted an ordinance in 1962 fixing salaries for the fiscal year 1962-63; the mayor vetoed the ordinance, the council failed to override the veto and no salary schedule was provided for 1962-63, although the council later provided a schedule of salary increases for the period January 6 to July 1, 1963.

Following issuance of the writ the defendants proceeded as directed. The final result of their actions was a determination by the council that the salaries being paid by the city were factually and legally sufficient and that no adjustment of the same was required.

Although minor claims of error are asserted by plaintiffs, we have found them to be unsubstantial, and the decisive question on the appeal is whether the action taken by defendants pursuant to the writ was fraudulent, or so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law.

For 20 years the uniform practice of the city had been to interview a large number of persons, companies and corporations to learn whether they had jobs comparable to city jobs, and if so, the scale of salaries being paid. These were referred to as "bench mark jobs." By a process of extrapolation salaries in all other city jobs were brought into line with salaries fixed for the bench mark jobs.

City salaries are on the five-step plan, referred to in oral argument as the Jacobs plan, which was adopted by the city in 1945. Under this plan the salary of a city employee advances at the rate of $5\frac{1}{2}$ percent per year; after four years the employee enters the fifth and last step. In order to permit comparison with city salaries in the several steps, the salary data gathered from the survey of jobs in industry is tabulated in the form of an array showing the number of employees at each salary level from lowest to highest. In order to obtain reliable figures, one-quarter of the employees at each end of the array is eliminated and only the middle 50 percent or interquartile range is considered. Four different salary figures within the interquartile range are computed for each job: (1) the first quarter (IQ), the point at which the interquartile range begins; (2) the median, the point at which half of the jobs pay more and half pay less; (3) the weighted average, the sum of all wages paid divided by the number of employees receiving such wages, and (4) the third quartile (3Q), the

point at which the interquartile range ends. Under the formula used by the city in ascertaining salaries paid in industry, for each of IQ, the median, the weighted average and 3Q there was a precise amount stated for purpose of comparison with city salaries. For the purpose of comparison with city salaries, the median and weighted average were treated as the same.[1]

As a basis for comparison of city salaries in the several steps with comparable salaries in industry in the bench mark jobs the standard practice of the city was to compare IQ with the city's first step, the median or weighted average with the city's third step and 3Q with the city's fifth step. When the writ of mandate was served the matter was referred to the Personnel and Finance Committees, as usual, for investigation, report and recommendation. Seven public hearings were conducted by the committees. Under date of May 6, 1963, the City Administrative Officer presented to the committees a report which set forth the standard formula above mentioned. The report stated that there were 36 bench mark jobs to be considered and there was attached a schedule of salaries paid by the city and comparable salaries paid in industry in these jobs. This schedule set forth the five steps of city salaries and the salaries being paid at IQ, the median, the weighted average and 3Q of the interquartile range. The report stated: "The salaries or wages being paid to City employees in these 36 jobs on July 1, 1962, were greater than the minimum salaries or wages found in all cases, and are in all cases at least equal to or greater than any wage which we believe may reasonably be determined to be prevailing in private employment." The report also stated: "You will note that all recommended salaries are well within the limits designated by the minimum and maximum rates as found for each of the survey bench mark jobs." This report made no specific recommendation with respect to salaries for 1962-63 although the foregoing statements clearly indicated that no increase would be justified.

May 31, 1963, the City Administrative Officer submitted another report accompanied by a schedule of salaries paid as shown in the May 6th report. This schedule was headed "Distribution of City Employees in Bench Mark Classes by Salary Step as of January 1962 Showing Amount Each Step Exceeds

[1]We shall refer to the median and not the weighted average because in all cases they were substantially the same; there is no weighted average of city salaries.

1st Quartile of Survey Date for 1962 on Actual Salaries 1962.'' The recommendation was against any increase of salaries.

Thus the committees had before them figures which would have permitted use of the standard formula for comparing IQ with city step No. 1, the median with city step No. 3, and 3Q with city step No. 5. Neither report disclosed that the City Administrative Officer had discarded the standard formula of comparison in favor of one which compared each step of city salary with the first quartile of the survey.

The committees adopted the report and recommendation of the City Administrative Officer and so reported to the council, which adopted the report and recommendation of the committees and declined to make any adjustment of salaries.

It is clear that the committees and the council relied upon the report and representations of the City Administrative Officer; they believed the facts were truly stated in the heading of the report; they believed that a proper basis of comparison of salaries was to compare all affected city salaries with the lowest grade (IQ) in the interquartile range, and they believed that the city was paying equal salaries in all bench mark jobs. If they had not entertained such beliefs they would not have acted in reliance upon the report and recommendation.

The procedure was wrong in several respects: it was not true that all city salaries in bench mark jobs were equal to IQ; in 17 jobs IQ was higher than city step No. 1; in 9 jobs IQ was higher than city step No. 2; in one job it was higher than step No. 3. Thus, even under the new formula devised by the City Administrative Officer salary increases were indicated for all these jobs; moreover, the basis of comparison used by the City Administrative Officer was unreasonable, inadequate and erroneous. Discarding the standard formula was arbitrary in the extreme and, as we shall presently develop, was a clear violation of duty.

The annual surveys are conducted in order to find bench mark jobs and to learn the salaries being paid; under the standard formula lowest salaries are compared with lowest, intermediate with intermediate, and highest with highest. Comparing all city salaries with the lowest in the interquartile range would be meaningless and deceptive. Yet this was the method used by the City Administrative Officer and it was the responsible cause of the false conclusion that there was no inequality in the salaries being paid.

Early in 1962, based upon a survey made in January and February, the City Administrative Officer made a computation and comparison of salaries under the standard formula. He recommended salary increases for 1962-63 amounting to $3,529,108 which he said would represent the prevailing rate of pay in the community. To be sure, the increases which were then ordered upon this recommendation did not meet with the approval of the mayor, but this rebuke did not entirely defeat the purpose of the council and the other city officials who were involved. They came back with another schedule, based upon the existing survey figures, and upon the basis of the standard formula the salaries were increased accordingly, effective January 6, 1963.

In argument in the hearing in the trial court, in its briefs and in the oral argument on the appeal, the city failed to meet squarely or attempt to justify the about-face of the City Administrative Officer between 1962 when he recommended increases of more than $3,500,000 and in 1963 when he found, upon the basis of the same facts, that no increases were due.

The parties understand, and we understand, that if it appears, as a matter of law, that the defendants in failing to increase salaries in 1963 for the year 1962-63 were guilty of abuse of discretion, they therefore failed to comply with the writ of mandate, and the order of the trial court should be reversed; otherwise it should be affirmed.

The motive of the City Administrative Officer in discarding the standard formula of comparison in favor of a new one is readily seen in the results. Upon his own schedules, by use of the standard formula, it would be found not only that IQ is higher than several city step Nos. 1, 2 and 3 as previously shown, but also that the median is shown to be higher than step No. 3 in 24 jobs, and 3Q is shown to be higher than step No. 5 in 13 jobs. These discrepancies are substantial, and no doubt they provided the basis for the increases which the council attempted to grant for the year 1962-63 of more than $3,500,000.

The conclusion is inescapable that the City Administrative Officer declined to make use of the standard formula in order to convince the committees and the council that the action taken to grant increases for 1962-63 was a mistake and that no increases were then due.

As the adviser of the committees and the council and as the responsible official of the city, the City Administrative Officer failed utterly to perform his duties. This breach of duty oc-

curred at the top, and polluted all the subsequent proceedings, which were based upon the representations and recommendations of the City Administrative Officer. Strange as it may seem, the committees and the council were actually caused to believe that inequalities that were found to exist in 1962, did not, in fact, exist and that the city salaries, instead of being below those being paid in industry, to the extent of more than $3,500,000, were, at least, equal.

All the facts relevant to the question whether the defendants complied with the writ were established by documentary evidence. The city contends that the defendants acted in all respects within their discretionary authority. We cannot agree. They not only proceeded under a theory that inevitably led to a false conclusion adverse to the plaintiffs, but they ignored their own evidence which established, affirmatively, that in many of the city jobs salary increases were due. This was not merely an abuse of discretion. It was a flagrant breach of duty.

In the hearings in the trial court it was contended and is still argued by plaintiffs that the City Administrative Officer failed to ascertain whether there were more bench mark jobs than he found to exist. The representations to this effect were given full consideration in the hearings before the committees and before the council and were found to be unsustainable. The finding of the City Administrative Officer was made from information obtained in interviews with 750 businesses in the joint survey. Whether the jobs numbered 36 as the City Administrative Officer stated and as shown in the schedules, or more, the matter was one within the discretion and judgment of the City Administrative Officer and no abuse of discretion was shown.

Our conclusions are the following: The City Administrative Officer properly performed his duty in finding the number of bench mark jobs; the hearings before the committees were conducted fully and fairly by the committees; the standard formula for comparison of salaries has been proven to be fair and adequate as to the city and its employees; the substitute method of comparison of salaries foisted upon the committees and the council by the City Administrative Officer was inadequate, unfair and deceptive, and its use by the City Administrative Officer, the committees, the council and the other defendants was unreasonable, arbitrary, and a breach of duty; the defendants failed to perform their duties as defined

by the charter and applicable ordinances and they failed to comply with the writ of mandate.

Named as defendants with the city were the Department of Recreation and Parks, the Library Department of the city, the City Employees Retirement System, the Department of Pensions and the individuals comprising the boards of these departments. The writ ran to all defendants. The actions taken by the different departments in fixing salaries were based upon the action taken by the city council, and for the same reasons. The departments failed to perform their duties in the same particulars in which the city failed.

The order appealed from is reversed; the court is directed to order all the defendants to comply with the writ of mandate, and the court shall make any further appropriate orders to compel obedience to the writ. Appellants shall have judgment for costs only against the City of Los Angeles, the Department of Recreation and Parks, the Library Department of the city, the City Employees Retirement System and the Department of Pensions.

Ford, P. J., and Moss, J., concurred.

A petition for a rehearing was denied August 7, 1967, and respondents' petition for a hearing by the Supreme Court was denied September 7, 1967.