[L.A. Nos. 29722, 29723. In Bank. Oct. 14, 1970.]

EUGENE R. SANDERS et al., Plaintiffs and Respondents, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

(Two Cases.)

254

## Counsel

Roger Arnebergh, City Attorney, John A. Daly, Bourke Jones and Jack L. Wells, Assistant City Attorneys, and John B. Rice, Deputy City Attorney, for Defendants and Appellants.

Lemaire, Mohi, Morales, Dumas & Song, Cy H. Lemaire, Frank C. Morales and Herman F. Selvin for Plaintiffs and Respondents.

Ball, Hunt, Hart & Brown, Joseph A. Ball, Lowenthal & Lowenthal, Morris Lowenthal, Wikle, Atkinson, Boller & Falls, Walter Atkinson, David B. Boller, Richard Salle and E. Jerald Haws as Amici Curiae on behalf of Plaintiffs and Respondents.

## Opinion

McCOMB, Acting C. J.—This matter has been in litigation since 1962. In that year representative actions were brought, Sanders, et al., on behalf of employees, other than firemen or policemen, of the City of Los Angeles and, Forbes, et al., on behalf of firemen and policemen, against the city and certain of its departments for a declaratory judgment and writ of mandate.[1] Substantially identical judgments and writs were issued and defendants were ordered to fix the salaries and wages of these employees for the fiscal year 1962-63 pursuant to section 425 of the city charter

[1] A third action, Schmoe v. City of Los Angeles, was filed by eight plaintiffs, members of the class of *Sanders*. They agreed to abide by the decision in *Sanders* and went away.

which the defendants had failed to do. The judgment and writs became final June 25, 1963, no appeal having been taken. At the hearings upon the return to the writs the trial court found that the writs had been complied with and ordered them discharged. Separate appeals were taken. In the present action the order of the trial court was reversed and the court was directed to order defendants to comply with the writ and to make any further appropriate orders to compel obedience thereto. (*Sanders* v. *City of Los Angeles* (1967) 252 Cal.App.2d 488 [60 Cal.Rptr. 539]; petition for rehearing denied August 7, 1967, petition for hearing by this court denied September 7, 1967.) In the proceeding brought on behalf of the members of the fire and police department, the orders were affirmed (*Forbes* v. *City of Los Angeles* (1965) 2d Civ. 28819, certified for non-publication in Official Reports under rule 976).

Following the remittitur herein, another return was filed by defendants, contested hearings were held thereon, and the return was rejected. On August 14, 1968, the court ordered that defendants pay certain salary and wage increases retroactively. On October 22, 1968, further orders were entered, predicated upon the August order, which required the payment of interest and attorneys' fees. The present appeal is from these two orders.

The background of this litigation is fully stated in *Sanders* v. *City of Los Angeles, supra,* 252 Cal.App.2d 488.

In 1925 section 425 of the Charter of the City of Los Angeles was enacted. It provides that "In fixing the compensation to be paid to persons in the city's employ, the Council and every other authority authorized to fix salaries or wages, shall, in each instance, provide a salary or wage at least equal to the prevailing salary or wage for the same quality of service rendered to private persons, firms or corporations under similar employment, in case such prevailing salary or wage can be ascertained." This section was not implemented by appropriate ordinances until 1945 when a five-step classification and compensation plan was adopted (Salary Standardization Ordinance No. 89,100). Under section 5.1 of Ordinance No. 89,100, as amended by Ordinance No. 107,047, it is provided that: "(b) . . . The City Administrative Officer is hereby directed to make a salary survey at least once each year and to present his report on such salary survey to the City Council on or before April 10 of each year by filing the same with the city clerk. Such report shall contain summary findings on prevailing salaries or wages of positions in a representative sample of business establishments in the City of Los Angeles metropolitan area and the positions in other governmental agencies which have positions comparable to those in the city service, together with recommenda-

tions, if any, for changes in salary schedules applicable to all classes of positions in the city service." The ordinance requires the council to make the salaries so fixed effective as of July 1 of each year.

Annual surveys were made and interviews conducted to determine whether there were positions in private industry comparable to city jobs and, if so, the scale of salaries being paid. Comparison was not attempted as to all jobs, but those so compared were known as benchmark positions. From the salaries ascertained for these positions, prevailing wages and salaries were ascertained for related classes by a process of extrapolation. As a result of the survey made in 1962 the city administrative officer recommended to the city council that it provide salary increases for 10,367 nonuniformed employees in 16 benchmark positions and 563 classes totalling $3,529,108, and that increases of approximately $3,500,000 be paid to members of the fire and police departments for the fiscal year 1962-63. The council approved and it requested the city attorney to prepare an ordinance to this effect. This ordinance was adopted July 16, 1962, but was vetoed by the mayor for budgetary reasons. The council failed to override his veto. Several weeks later the council readopted the same ordinance but made it effective as of January 5 (later changed to January 6), 1963. This left a hiatus between July 1, 1962, and January 6, 1963, of approximately $1.8 million in salary and wage increases unpaid.

In seeking declaratory relief these plaintiffs asked in the alternative (1) that defendants be mandated to proceed to make the ascertainment and to provide the prevailing wages and salaries as ascertained or (2) that defendants be required to adopt an ordinance similar to the vetoed ordinance. The declaratory judgment declared that the provisions of section 425 of the charter were mandatory; that the duties of the wage-fixing authorities include a quasi-judicial, non-legislative, fact-finding function preceding or accompanying the fixing of compensation and that it was the duty of each defendant on or before July 1 of each year to ascertain the prevailing wages and as of July 1 of each year to provide the salary or wage for each instance of employment at least equal to the said prevailing salary or wage so ascertained.

The writ commanded the wage-fixing authorities "on or before July 1 of each year, to ascertain through any appropriate administrative procedure, in each instance of employment in the city's employ . . . the prevailing salary or wage for the same quality of service rendered to private persons . . . under similar employment where such prevailing salary or wage can be ascertained. (Not having performed this duty on or before July 1, 1962, you must now do so and make such ascertainments as of July 1, 1962.)"

It further provided that once the prevailing salaries and wages were ascertained "you and each of you shall provide additional salaries and wages to each person for whom you are authorized to fix a salary or wage . . . where additional salaries or wages are necessary so as to provide a salary or wage at least equal to the prevailing salary or wage for the same quality of service rendered to private persons, firms or corporations under similar employment in case such prevailing salary or wage can be ascertained, retroactive to July 1, 1962."

In the first return filed to this writ defendants reported that they had recommended, and the city council and other defendants had ascertained, that the salaries being paid to city employees for the period in question were factually and legally sufficient and that no adjustment (increases) were required. The writ was discharged. Plaintiffs appealed and the order of discharge was reversed. It was held on appeal that it was arbitrary in the extreme for the city administrative officer to have discarded the standard formula, which was fair and equitable to the city employees, and adopted new formulas for the obvious purpose of convincing the council that the action taken to grant increases for 1962-63 was a "mistake"; that the city failed to justify this "about-face" in recommending on the same facts that no increases were due; that as the adviser of the council and the responsible city official this was not merely an abuse of discretion and a flagrant breach of duty on the part of the city administrative officer but that it had polluted all the subsequent proceedings which were based upon his representations and recommendations.

After the remittitur went down the original writ was reissued. The city administrative officer again used the 1962 salary survey data, as he had in 1963, again discarded use of the standard formulas and applied new formulas, and as a result he found and recommended increases in salary and wages to four benchmark positions totalling 1,033 employees in the sum of $155,000, as opposed to the 16 benchmark positions totalling 10,367 employees in the sum of $1,800,000 in 1962. The Personnel and Finance Committees conducted their own hearings and they recommended the adoption of the salaries and wages ascertained by the 1962 ordinance. On April 30, 1968, the council voted in favor of this recommendation, but in its vote on May 28, 1968, the ordinance failed to pass. On June 24, 1968, the council voted in favor of an ordinance which carried out the 1968 recommendations of the city administrative officer. Defendants filed a return to the writ and requested its discharge.

The trial court rejected the return and on August 14, 1968, ordered defendants "to proceed at once to provide the increases to salaries and wages for the period of July 1, 1962 to January 5, 1963, inclusive, that

would have been provided by the Ordinance of July 16, 1962, had it been made effective as of July 1, 1962." It ordered that the salary increases not be paid out until further order of the court (jurisdiction having been reserved to consider the matter of allowance of interest on the judgment and the surcharge upon the fund created for employees of the fees for the attorneys who represented them in this proceeding).

Without relating again the complex classification system (described in *Sanders, supra,* 252 Cal.App.2d 490-493) the trial court here, and the appellate court in *Sanders* found that the use of new formulas was unreasonable and arbitrary and that defendants had not complied with the peremptory writ. The Court of Appeal had found the standard formula to be fair and adequate as to the city and its employees and had recognized, and impliedly approved, the use of the extrapolation process to bring salaries "in all other city jobs" into line "with salaries fixed for the benchmark jobs." It found no abuse of discretion in the determination of the number of benchmark jobs (36). The trial court, after it rejected the second return to the writ, expressly found that there was a relationship between benchmark and nonbenchmark jobs which could be determined by extrapolation or traditional salary relations. It reviewed in detail the new formulas applied by the city administrative officer in support of its finding that he had acted wrongfully in making his recommendations to the council. The court reviewed section 425 of the charter and pointed out that the council had failed to literally comply with this section (had not conducted a class-by-class survey for every position); that literal compliance could be excused only if the in lieu procedures were fair and adequate; and that the court could not ignore the in lieu procedures which had been used by the city for over 20 years, and which had their bases in other charter provisions and in ordinances resulting in contemporaneous administrative interpretation of section 425. It found that the council had made the ascertainment required by section 425 of the prevailing rates of pay required to be provided as of July 1, 1962, such determination having been made on July 2, July 16, August 20 and August 27 of 1962; that only budgetary problems prevented the ascertained increases from being provided by ordinance; that this objection could not be considered; and having thus *ascertained* the increases due they must *provide* them, citing *Walker* v. *County of Los Angeles,* 55 Cal.2d 626 [12 Cal.Rptr. 671, 361 P.2d 247] (construing a similar provision in the county charter).

In the companion appeal, *Forbes, supra,* a different situation was presented and a different result reached. The parties in *Sanders* herein make diametrical claims as to what the *Forbes* decision holds regarding the application of charter section 425 to city employees where a counterpart in

private industry was not or could not be found. In *Forbes* it was found by the Personnel Committee, concurred in by the city council, that "there is no job classification in city service under the provisions of Ordinance 89,935 [The Salary Standardization Ordinance of the City of Los Angeles] pertaining to uniformed personnel of the city's fire and police departments in which there is rendered the same kind or nature of service as is rendered to private persons, firms or corporations under similar employment for which a prevailing salary or wage can be ascertained." The Court of Appeal rejected the contention that there were indirect methods of wage determination which had been employed by the city with respect to various job categories which could be effectively related to firemen and policemen (the extrapolation process considered in *Sanders*), and held that in fixing compensation for these uniformed personnel the city had always recognized that it was acting pursuant to section 33 of the charter and not exclusively pursuant to section 425 thereof. Section 33 provides that the council ". . . shall fix the salaries of all officers and employees except as otherwise provided in this charter. . ." and section 13 of the Salary Standardization Ordinance specifically provides that "Pursuant to the provisions of Section 33 of Article III of the Charter the Council has determined and fixed the salaries of all members of the Fire and Police Departments. . . . The salary schedules hereinafter listed in section 14 constitute the compensation made applicable to all classes of positions in said departments and represent the salary schedules for such classes of persons."

The contemporaneous construction of section 425 therefore shows a distinction between the noncomparable positions of firemen and policemen, and the noncomparable positions of other employees in city service. As to the latter, certain positions found to be comparable had their wages adjusted to those in private industry; and by extrapolation and the five-point schematic system (described in the opinion in *Sanders, supra*) and the various "series," "groups" and "classes of positions" described in the Salary Standardization Ordinance[2], adjustments in salaries were made to comply with the prevailing wage policy established by the charter.

[2]The Salary Standardization Ordinance No. 89,100 section 2.1 provides as follows:

"(g) 'Series' means one or more occupational or family groups having classes of positions with duties substantially similar in nature and character, such classes being placed in the respective groups to aid in the process of classification, in determining and fixing compensation and in administering the City classification and compensation plan.

"(h) 'Group' means a major subdivision of a series, including one or more classes of positions in an associated craft, occupation, profession, or functional activity.

"(i) 'Class' or 'Class of positions' means a definitely recognized kind of employment in the City service designed to embrace all positions sufficiently similar in

In its order of October 22, 1968, the court held that this was a proper case for surcharging a common fund with the expenses of its recovery and ordered respondents to pay 25 percent of the recovery, including interest, of each person who received a retroactive pay increase by reason of this litigation, including those which respondent found to be due, subject to retention of $1,400 for administrative expenses in making and paying the percentage deduction. It held that the action would support a judgment for interest since it involved recovery upon a general underlying monetary obligation and was capable of being made certain by calculation. Interest at the rate of 7 percent per annum was ordered paid from July 1, 1962, on the base sum of approximately $1.8 million.

The issues urged on appeal are 1) whether the trial court correctly determined on August 14, 1968, that defendants failed to comply with the writ? 2) whether the action directed by that order is required by the writ? 3) whether the trial court correctly ordered that prejudgment interest be paid? and 4) whether the trial court correctly held that attorneys' fees can be surcharged upon this common fund?

*Questions:* One. *Did the trial court correctly determine on August 14, 1968, that defendants failed to comply with the writ?*

*Yes.* The writ provided that defendants may use "any appropriate administrative procedures" to make the required ascertainment. The ascertainment originally made used procedures that the appellate court in *Sanders* found to be fair and equitable, but the ordinance providing the increases so ascertained was vetoed for invalid reasons. The courts will interfere by mandamus when the action taken by the board is "so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law." (*City & County of San Francisco* v. *Boyd,* 22 Cal. 2d 685, 690 [40 P.2d 666]; *Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, 639.) The appellate court, and the trial court on remittitur, found that the procedures used by the defendants in 1963 and 1968 in determining the prevailing wage and salary increases due was unreasonable and unfair. Examination of the record indicates that there was substantial evidence in support of such findings.

Two. *Was the action directed by the order of August 14, 1968, required by the peremptory writ?*

*Yes.* In reversing the original order discharging the writ, the Court of

respect to the duties and responsibilities therefor in which: (a) the same requirements as to education, experience, knowledge and ability are demanded of the incumbents; (b) the same tests of fitness may be used in choosing qualified appointees; (c) the same schedule of compensation may be made to apply with equity."

Appeal directed the trial court to issue "any further appropriate orders to compel obedience to the writ." It is mandatory for defendants under section 425 of the charter to ascertain the prevailing wages paid in private industry and to provide them for employees in the city's employ. Ascertainment is a fact-finding function. It may precede or accompany the legislative act of providing the prevailing wages found (*Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, 632). This fact finding and determination was made by the city council in 1962 (and again on April 30, 1968). Having once ascertained the prevailing wage in 1962 defendant had no discretion to provide less. (*Otis* v. *Los Angeles County,* 9 Cal.2d 366, 373 [70 P.2d 633].) The peremptory writ expressly stated that it was the duty of defendants to ascertain and to provide the salary or wages ascertained. All that remained was for the city to provide by effective ordinance the prevailing wage so ascertained. There must be an end to litigation and it would be an idle and futile act to command defendants to once again ascertain the salaries and wages that prevail in private industry for the 16 benchmark positions as of July 1, 1962. The standard procedure used by defendants in making such ascertainment in 1962 was found to be fair in *Sanders, supra.*

Three. *Did the trial court correctly order that prejudgment interest be paid?*

*Yes.* The first application for payment of interest was not made until August 21, 1968. Section 3287 of the Civil Code provides as follows: "(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state. . . ." This is an exception to the general rule that interest cannot be recovered against a state or municipality. *Mass* v. *Board of Education,* 61 Cal.2d 612 [39 Cal.Rptr. 739, 394 P.2d 579], relied upon by the trial court, states at page 625: "Although some decisions suggest that interest cannot be recovered in a mandamus action [citations] we hold that the present action in mandamus may support a judgment for interest since it involves recovery upon a general underlying monetary obligation."

An action to recover retroactive pay increases is an action for damages within the meaning of section 3287 of the Civil Code. The

wrongful withholding of past due pension payments was held to fall within the definition of damages and to represent obligations on which interest will run. (*Benson* v. *City of Los Angeles,* 60 Cal.2d 355, 365-366 [33 Cal.Rptr. 257, 384 P.2d 649].) The damages due, here,—namely, the ascertainment of increases in salaries and wages due for the period in question, were capable of being made certain and were made certain by defendants in applying the standard methods and formulas to the 1962 survey data. All of the alternative methods of calculation attempted were rejected by the courts. The declaratory relief judgment clearly set forth that the salaries must be adjusted as of a certain date, July 1, 1962, and the peremptory writ required that they be provided effective as of that date.

 In a contested action interest may be awarded, if the plaintiff is entitled thereto, even though the complaint contains no prayer for interest. (*Sears, Roebuck & Co.* v. *Blade,* 139 Cal.App.2d 580 [294 P.2d 140].)

 Four. *Does the city or its departments have standing as aggrieved parties to contest the award of fees?*

*No.* Any party aggrieved may appeal (Code Civ. Proc., § 938). The liability of defendants was not increased in any way by reason of this award. Costs incurred by them in connection with making the necessary individual deductions was provided for in the order awarding fees. The only parties "injuriously affected" by the order for fees are members of the class in whose behalf the action was brought and out of whose recoveries the fees will be paid. They did not appear in objection to the award, did not move to vacate the award, and did not appeal.

The orders appealed from are affirmed.

Peters, J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Files, J.,* concurred.

The petition of appellant City of Los Angeles for a rehearing was denied November 10, 1970. Wright, C. J., did not participate therein.

---

*Assigned by the Acting Chairman of the Judicial Council.