[No. B231164. Second Dist., Div. Three. Oct. 11, 2012.]

LOS ANGELES INTERNATIONAL CHARTER HIGH SCHOOL, Plaintiff and Appellant, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part 5. of the Discussion.

**COUNSEL**

Procopio, Cory, Hargreaves & Savitch, Gregory V. Moser, Kendra J. Hall and John C. Lemmo for Plaintiff and Appellant.

Ricardo J. Soto, Phillipa L. Altmann, Julie Ashby Umansky; Luce, Forward, Hamilton & Scripps, McKenna Long & Aldridge and Charles A. Bird for California Charter Schools Association as Amicus Curiae on behalf of Plaintiff and Appellant.

David R. Holmquist, Mark Fall, Nathan A. Reierson; Strumwasser & Woocher, Gregory G. Luke, Beverly Grossman Palmer and Byron F. Kahr for Defendants and Respondents.

**OPINION**

**ALDRICH, J.—**

## INTRODUCTION

Proposition 39 requires public school districts to share their facilities fairly among all public school students, including those in charter schools (Ed. Code, § 47614, subd. (a), as amended by Prop. 39),[1] by, inter alia, providing charter schools with facilities sufficient to accommodate all of the charter schools' in-district students in conditions reasonably equivalent to those in which the students would be accommodated if they were attending other public schools in the district, and by making reasonable efforts to provide those facilities near where the charter schools wish to locate. (§ 47614, subd. (b).)

---

[1] All further statutory references are to the Education Code, unless otherwise noted.

At issue in this appeal is whether the trial court erred in finding that respondent Los Angeles Unified School District (the District) complied with a peremptory writ of mandate directing the District to offer Los Angeles International Charter High School (LAICHS) public school facilities for the 2010–2011 school year. (§ 47614, subd. (b); Cal. Code Regs., tit. 5, § 11969.1 et seq.; Regulations.) The District's return, filed with the court to show compliance, explained it offered LAICHS eight contiguous classrooms at Belmont High School. Preferring Franklin High School, LAICHS contends on appeal that the District did not comply with the writ because it did not provide evidence to support the decision to offer Belmont High School instead of the preferred Franklin High School. In the published portion of this opinion, we conclude the District provided adequate evidence showing that it fulfilled the terms of the writ and that LAICHS is not entitled to be placed in the specific location it desires. Accordingly, we affirm the order discharging the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

LAICHS is a high school chartered by the District's board of education in 2005. In its application for charter status, LAICHS indicated it had facilities in the Eagle Rock area of Los Angeles. In its third year, LAICHS signed a three-year lease of seven plus acres of private property located in the Hermon neighborhood between Highland Park and Eagle Rock. In 2009, LAICHS signed a new 10-year lease for that property, i.e., until 2020, and has invested substantial sums to make the old, abandoned school buildings useable.

LAICHS submitted a Proposition 39 request to the District for facilities for projected in-district average daily attendance (ADA) of approximately 157 students for school year 2010–2011. In its application, LAICHS indicated it wished to locate within the area served by Franklin High School, which is situated in local district 4. According to a District staff member, LAICHS praised its then current campus but expressed concerns about the rent for the facility and "tried to explore the possibility of receiving assistance [from the District] for [its] lease payments." The District noted that LAICHS "did not require or seek new facilities. [LAICHS] said that [its] existing facilities met all of the school's needs, and that its lease on those facilities extended through the year 2020." The District determined that it was unable to offer LAICHS space pursuant to Proposition 39.

LAICHS filed its petition for writ of mandate (Code Civ. Proc., § 1085) seeking an order directing the District to provide facilities for the school year 2010–2011. LAICHS also requested money damages. (Code Civ. Proc., § 1095.)

The trial court granted LAICHS's petition for writ of ordinary mandate. (Code Civ. Proc., § 1085.) After a dispute about the wording, in November 2010, the trial court entered a judgment issuing a peremptory writ of mandate that, pursuant to Proposition 39, "commanded [the District], immediately upon receipt of this Writ to make an offer of facilities to [LAICHS] for the 2010–2011 school year sufficient to accommodate all of [LAICHS's] 157 in-district students in conditions reasonably equivalent to those in which the students would be accommodated if they were attending other public schools in the district." The trial court ordered the District to make a return on the writ by December 14, 2010, describing the actions it took in conformity therewith. (Code Civ. Proc., § 1108.)[2]

No appeal from the judgment issuing the writ was filed and so that judgment is final. (*City of Carmel-By-The-Sea v. Board of Supervisors* (1982) 137 Cal.App.3d 964, 970 [187 Cal.Rptr. 379] (*City of Carmel*).) Instead, the District filed a statement of compliance with judgment/anticipatory return on the writ, explaining that it had satisfied the writ's directives by offering LAICHS space at Belmont High School.

LAICHS opposed the return arguing that the District did not provide sufficient evidence for its decision to offer facilities at Belmont High School and the costs associated with the proposed facilities constituted an illegal rent. LAICHS also requested a hearing on the money damages through the date the District complied with the writ (Code Civ. Proc., § 1095).

After a hearing on the District's return, the trial court ruled that the District's offer of facilities at Belmont High School complied with the writ and the relevant provisions of the Education Code and its regulations. The court ruled that the District had considered all legally relevant factors and provided sufficient evidence demonstrating a rational connection between those factors, the choice made, and the purposes of the enabling statute. The court also rejected LAICHS's challenge to the offer's facilities cost. After calendaring a hearing on the money damages issue,[3] the court discharged the writ in January 2011. LAICHS filed this timely appeal from the order discharging the writ. Additional facts will be discussed below.

---

[2] Code of Civil Procedure section 1108 reads, "Writs of review, mandate, and prohibition issued by the Supreme Court, a court of appeal, or a superior court, may, in the discretion of the court issuing the writ, be made returnable, and a hearing thereon be had at any time."

[3] We are told that the trial court took the hearing on money damages off calendar. Damages are not at issue in this appeal.

## DISCUSSION

### 1. *This issue is not moot.*

■ Preliminarily, we address the threshold contention raised by the District that the issue on appeal is moot.[4] " 'A case is moot when any ruling by this court can have no practical impact or provide the parties effectual relief. [Citation.]' " (*Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 364 [100 Cal.Rptr.3d 358].) An appeal will be dismissed where the issues have become moot. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 749 et seq., pp. 814–815.) The writ ordered the District, in pertinent part, to make an offer of facilities to LAICHS for the 2010–2011 school year, the academic year for which LAICHS's Proposition 39 request sought facilities. That academic year and another have long since passed, with the result that we are unable to provide relief. ■ However, an exception to the mootness doctrine is the distinct possibility that the controversy between the parties may recur. (*Bullis Charter School v. Los Altos School Dist.* (2011) 200 Cal.App.4th 1022, 1034 [134 Cal.Rptr.3d 133].) Presented with the same mootness question, the Court of Appeal in *Bullis* concluded that the recurrence exception applied. (*Ibid.*) Similarly, the controversy raised by LAICHS's petition is likely to recur because the process by which charter schools request facilities from school districts is an annual one. (See § 47614, subd. (b)(2).) Therefore, under this exception, the controversy here is not moot.

### 2. *The standard of review on appeal from an order determining that the respondent's return on a writ was adequate.*

■ When the trial court issues its judgment granting a peremptory writ, the respondent has two choices: to appeal that judgment or to comply with it. If the respondent elects to comply with the writ, it waives its right to appeal from the judgment granting the writ petition. (*City of Carmel, supra,* 137 Cal.App.3d at p. 970.)[5] Here, the District did not appeal from the order issuing the peremptory writ of mandate. Likewise, LAICHS did not appeal to challenge the language of the writ. Therefore, the District waived its right to appeal from the writ's directives, and LAICHS forfeited its right to challenge the writ's wording. (137 Cal.App.3d at p. 970.) That there are additional

---

[4] The District also moved this court in December 2011 for a dismissal of the appeal on the ground that the money damages portion of the case was still at issue rendering LAICHS's appeal piecemeal and premature. We postponed ruling on this motion until we addressed the appeal. We now deny the motion. This appeal is not premature. (*City of Carmel, supra,* 137 Cal.App.3d at pp. 970–971 [order determining adequacy of a return on a peremptory writ of mandate appealable as one relating to enforcement of earlier appealable judgment].)

[5] See footnote 4, *ante.*

proceedings involving the return on the writ does not change the finality of the judgment issuing the writ. (*Id.* at p. 971.) The order following the hearing into the adequacy of the District's return on the writ is appealable as an order enforcing the judgment. (*Ibid.*; Code Civ. Proc., § 904.1, subd. (a)(2).)

■　When a respondent believes it has completely fulfilled the terms of a writ, its return should state that it has satisfied the writ in full compliance with the final judgment and writ, and set out the actions taken to meet the writ's terms. (1 Cal. Civil Writ Practice (Cont.Ed.Bar 4th ed. 2012) § 10.5, p. 238.) "While detailed findings are not necessarily required, the [District's] explanation should be thorough enough, and factual enough, to permit effective review by the courts." (*Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986, 1006 [30 Cal.Rptr.3d 648] (*Ridgecrest*).)

■　The trial court that issues a writ of mandate retains continuing jurisdiction to make any orders necessary for complete enforcement of the writ. (*King v. Woods* (1983) 144 Cal.App.3d 571, 578 [192 Cal.Rptr. 724]; *California Lab. Federation v. Occupational Safety & Health Stds. Bd.* (1992) 5 Cal.App.4th 985, 989, fn. 1 [7 Cal.Rptr.2d 399]; see Code Civ. Proc., § 1097.)[6] If the petitioner or the court is dissatisfied with the return, the court may order the respondent to reconsider. (*City of Carmel, supra*, 137 Cal.App.3d at p. 971.) LAICHS challenged the District's return. When the trial court disagreed, LAICHS appealed from the order discharging the writ.

On appeal from an order discharging a writ, the issue is whether the trial court erred in ruling that the respondent, the District here, complied with the writ. Thus, our focus is on the District's response to the writ and the trial court's assessment of that response. (*City of Carmel, supra*, 137 Cal.App.3d at p. 972.)[7] "[W]e will uphold the [District's facilities] decision unless it is devoid of evidentiary support. This test calls upon us to ensure that the [District] has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choices made, and the purposes of the enabling statute." (*Golden Drugs Co., Inc. v. Maxwell-Jolly* (2009) 179 Cal.App.4th 1455, 1471 [102 Cal.Rptr.3d 446].) Where, as here, the statute leaves room for discretion (*id.* at p. 1465), we must determine whether the action taken by the District pursuant to the writ was "so palpably

---

[6] Code of Civil Procedure section 1097 provides in part that when a peremptory writ has issued and is persistently disobeyed, the court "may make any orders necessary and proper for the complete enforcement of the writ."

[7] The assertions of amicus curiae to the contrary notwithstanding, the issues in this case are narrow as they involve the specific question of whether the trial court erred in ruling that the District complied with the directives in the writ. This appeal is not the proper forum for a discourse on the general treatment of charter schools around California.

unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law" (*Sanders v. City of Los Angeles* (1967) 252 Cal.App.2d 488, 489, 490 [60 Cal.Rptr. 539] [appeal from order discharging writ of mandate]).[8]

### 3. *Proposition 39*

Adopted in 1992, the Charter Schools Act of 1992 (§ 47600 et seq.) aims "to provide opportunities for teachers, parents, pupils, and community members to establish and maintain schools that operate independently from the existing school district structure . . . ." (§ 47601.) In November 2000, California voters approved Proposition 39 to amend the Charter Schools Act. (Prop. 39, § 6, eff. Nov. 8, 2000.) The declared intent of Proposition 39 is "that public school facilities should be shared fairly among all public school pupils, including those in charter schools." (§ 47614, subd. (a).) The State Board of Education has adopted regulations governing the provision of facilities by school districts to charter schools. (Regs., § 11969.1 et seq.)

■ As is relevant here, section 47614 directs school districts to make facilities available to charter schools that will accommodate the charter schools' in-district students. School districts must allocate facilities to the charter schools based on the charter schools' projected ADA of in-district students for the following year. (§ 47614, subd. (b) & (b)(2).)

More particularly, section 47614 establishes parameters for school districts in locating facilities for charter schools. Subdivision (b) of section 47614 provides, "Each school district shall make available, to each charter school operating in the school district, facilities sufficient for the charter school to accommodate all of the charter school's in-district students in conditions reasonably equivalent to those in which the students would be accommodated if they were attending other public schools of the district. Facilities provided shall be contiguous, furnished, and equipped, and shall remain the property of the school district. The school district shall make reasonable efforts to provide the charter school with facilities near to where the charter school wishes to locate, and shall not move the charter school unnecessarily."

■ Implementing Regulations section 11969.3 sets forth the method for determining reasonable equivalency under Education Code section 47614,

---

[8] The authorities LAICHS cites for the standard of review are distinguished as they involve appeals from the judgment *issuing* a peremptory writ of mandate, rather than review of the court's decision, *postissuance*, that the respondent complied with the writ. (*Sequoia Union High School Dist. v. Aurora Charter High School* (2003) 112 Cal.App.4th 185, 190–191 [5 Cal.Rptr.3d 86] [appeal from granting peremptory writ]; *McBail & Co. v. Solano County Local Agency Formation Com.* (1998) 62 Cal.App.4th 1223, 1226 [72 Cal.Rptr.2d 923] [same]; *Ridgecrest, supra*, 130 Cal.App.4th at p. 992 [appeal from denial of writ petition].)

subdivision (b). The school district first creates a comparison group of district-operated schools with similar grade levels that serve students living in the high school attendance area in which the largest number of students of the charter school reside. (Regs., § 11969.3, subd. (a).)[9] The school district then contrasts the comparison group schools' capacity (Regs., § 11969.3, subd. (b)), specialized classroom space (*id.*, subd. (b)(2)),[10] and various factors of physical condition and infrastructure (Regs., § 11969.3, subd. (c)),[11] to determine what school meets the requirements of section 47614, subdivision (b).

---

[9] Regulations section 11969.3, subdivision (a) reads in relevant part, "Comparison Group. [¶] (1) The standard for determining whether facilities are sufficient to accommodate charter school students in *conditions reasonably equivalent to those in which the students would be accommodated* if they were attending public schools of the school district providing facilities shall be a *comparison group* of district-operated schools with *similar grade levels*. . . . [¶] (2) The comparison group shall be the school district-operated schools with similar grade levels that serve students living in the high school attendance area, as defined in Education Code section 17070.15(b), in which the largest number of students of the charter school reside. The number of charter school students residing in a high school attendance area shall be determined using in-district classroom ADA projected for the fiscal year for which facilities are requested." (Italics added.)

[10] Regulations section 11969.3, subdivision (b) states in part, "Capacity. [¶] (1) Facilities made available by a school district to a charter school shall be provided in the same ratio of teaching stations (classrooms) to ADA as those provided to students in the school district attending comparison group schools. School district ADA shall be determined using projections for the fiscal year and grade levels for which facilities are requested. Charter school ADA shall be determined using in-district classroom ADA projected for the fiscal year and grade levels for which facilities are requested. The number of teaching stations (classrooms) shall be determined using the classroom inventory prepared pursuant to California Code of Regulations, title 2, section 1859.31, adjusted to exclude classrooms identified as interim housing. . . . [¶] (2) If the school district includes specialized classroom space, such as science laboratories, in its classroom inventory, the space allocation provided pursuant to paragraph (1) of subdivision (b) shall include a share of the specialized classroom space and/or a provision for access to reasonably equivalent specialized classroom space. The amount of specialized classroom space allocated and/or the access to specialized classroom space provided shall be determined based on three factors: [¶] (A) the grade levels of the charter school's in-district students; [¶] (B) the charter school's total in-district classroom ADA; and [¶] (C) the per-student amount of specialized classroom space in the comparison group schools. [¶] (3) The school district shall allocate and/or provide access to non-teaching station space . . . ."

[11] Regulations section 11969.3, subdivision (c) entitled, "Condition" requires school districts to consider all of the following conditions to determine reasonable equivalency of conditions of the facilities. "Condition is determined by assessing such factors as age (from latest modernization), quality of materials, and state of maintenance.

"(A) School site size.

"(B) The condition of interior and exterior surfaces.

"(C) The condition of mechanical, plumbing, electrical, and fire alarm systems, including conformity to applicable codes.

"(D) The availability and condition of technology infrastructure.

"(E) The condition of the facility as a safe learning environment including, but not limited to, the suitability of lighting, noise mitigation, and size for intended use.

### 4. *The District's return complied with the writ.*

#### a. *The District provided sufficient evidence of capacity.*[12]

LAICHS's challenge to the sufficiency of the District's return focuses on capacity. LAICHS contends the District's return lacks data of classroom capacity at other schools, principally at Franklin High School where LAICHS wishes to be placed, and offered no discussion of available middle school sites. The trial court reviewed the evidence and rejected LAICHS's contentions and evidence, finding not only that the District had demonstrated its compliance with the writ, but in particular that the District "provided competent *uncontroverted* evidence that Franklin High School cannot accommodate the Petitioner's request." (Original italics.) We agree with the trial court.

The record shows that the District addressed all of the relevant factors in Regulations section 11969.3 to determine whether Belmont High School would be "reasonably equivalent" to the campus LAICHS's students would attend were they not in a charter school. In support of its return, the District submitted its facilities offer and a series of declarations executed under penalty of perjury to explain the process it followed and the data it used to locate and offer space to LAICHS pursuant to the writ and LAICHS's Proposition 39 facilities request.

The District created a comparison group of schools at the same grade levels as LAICHS: Belmont, Franklin, Lincoln, and Wilson High Schools, all of which were at or near where LAICHS stated in its application it wished to be located. (Regs., § 11969.3, subd. (a).) Weighing these comparison schools, the District concluded that "almost all of the high schools in northeast Los Angeles (which comprises Local District 4 and Local District 5)" lacked classrooms available to accommodate LAICHS's students. By comparison, Belmont High School, a grade-alike District campus nearest to both LAICHS's private campus and Franklin High School, had eight contiguous, full-sized, exclusive-use classrooms available for academic year 2010–2011 (which the District allocated as seven classrooms and one office), in a building separate from the main part of the campus, but with immediate

---

"(F) The condition of the facility's furnishings and equipment.

"(G) The condition of athletic fields and/or play area space."

[12] LAICHS's request that we take judicial notice, and its motion for consideration of additional evidence (Code Civ. Proc., § 909), both filed in February 2012, are denied. (Evid. Code, § 452; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085] [appellate review limited to evidence before the trial court at time of challenged ruling].)

access to a wide array of shared-use facilities. The District's return also contained a chart showing what facilities were available at all of the comparison group schools.

Comparing campus conditions and infrastructure (Regs., § 11969.3, subd. (c)), the District found that Belmont High School's facilities are reasonably equivalent to, if not better than, all of the comparison group schools with respect to campus size and condition. This is because of 54 "modernization/upgrade construction projects, totaling $53.8 [million]" at Belmont High School that far outstripped the renovations at the other comparison schools.

Focusing on the evidence of capacity, the District described how it assessed the capacity of each school site for available classrooms, the manner in which the classrooms are used, the operating capacity of each school, and the then present and projected uses of District school sites. Belmont High School had the best ratio of classrooms to students (Regs., § 11969.3, subd. (b)(1)) and had specialized classroom space (*id.*, subd. (b)(2)) and non-teaching-station space (*id.*, subd. (b)(3)), such as an office, an auditorium, library, athletic fields, and cafeteria.

The District also provided capacity data for the comparison schools. Although Wilson High School in Local District 5 was operating slightly below capacity, it did not have sufficient classrooms available to accommodate the 157 in-district LAICHS students. Lincoln High School in Local District 5 was operating at overcapacity because its total campus capacity was 2,379, and total enrollment was 2,485.

As for Franklin High School, although there were 81 available seats dotted randomly throughout the campus, these empty seats do not translate into a single, free classroom. The District explained that "[a] school may be able to absorb 100 or more students into its existing classrooms by adding three, four or five seats per classroom," but that is a different proposition than "provid-[ing] three empty classrooms with the same total number of contiguous available seats." The difficulty of carving out whole classrooms is compounded on the high school level where students do not sit in one room all day, but move around to different rooms, with different groups of students, under the state-mandated curriculum.

The District also presented evidence of the harm to District-taught students of carving out LAICHS-exclusive classrooms at Franklin High School, the school LAICHS had requested. The District would have had to redistribute eight classrooms serving 40 classes, displace 240 students, and force eight teachers with five different periods each day to vacate their classrooms, so as

to provide the 157 LAICHS students with eight contiguous classrooms in the midst of the school year. The District detailed the effects of this disruption: school administrators would have had to recalculate the master schedule, disturb instructional programs, and interrupt the ongoing education of the Franklin students. The school would also have had to institute a program of classroom sharing by dismantling the dedicated assignment of classrooms to specific teachers and requiring those teachers to travel from room to room each day carrying all of their materials with them (referred to as "traveling teachers"). Not only would this have created particular challenges for specialized classrooms such as science labs, but requiring teachers to travel disrupts lesson continuity and interferes with essential classroom facilities such as bulletin boards and storage space. The District would have had to disperse 240 Franklin High School students to other similar classes or to other schools in the middle of the academic year, upending the schedules of those students, and potentially putting them at academic disadvantage.

The District explained the meaning behind the State Department of Education capacity data LAICHS submitted in an effort to demonstrate that Franklin High School was not overcrowded. Franklin operated on a multi-track calendar through academic year 2007–2008, meaning that, by definition, the school was operating "far over its proper capacity." Franklin also involuntarily received hundreds of students from other overcrowded schools. Exacerbating this overcrowding was lost space because of a large number of planned and ongoing construction projects. The decline in enrollment data cited by LAICHS actually reflected a *discontinuation of the involuntary busing program* only, but did not otherwise alleviate the overcrowding at Franklin.

We reject LAICHS's contention that the District's return on the writ is inadequate because it contained no analysis of available middle schools. The Regulations require, in determining equivalency, that school districts consider facilities with "similar grade levels." (Regs., § 11969.3, subds. (a)(1)–(2), (b)(1) & (2)(A).) Furthermore, not only did LAICHS request a high school facility, but its request recognized that a middle school would be inappropriate. By insisting that the classrooms the District offered should include high-school-specific facilities (such as athletic fields and libraries), LAICHS effectively precluded an offer of a middle school campus, which would not contain such facilities. Ultimately, consideration of a middle school campus is unnecessary here because Belmont High School met the requirements of Proposition 39 as it had eight contiguous classrooms available and was a fully equivalent, grade-alike facility, in the same local district as LAICHS's students, and near where LAICHS wished to be located.

In sum, ample evidence supports the trial court's finding that the District considered the Regulations section 11969.3 factor of capacity at all of the comparison schools, including Franklin High School.

 b. *Education Code section 47614, subdivision (b) does not mandate that districts place charter schools in the exact location they desire.*

LAICHS does not really dispute that Belmont High School meets the requirements of section 47614, subdivision (b). Rather, the essence of LAICHS's appeal is the contention the District abused its discretion by not offering facilities at Franklin High School, the school most of LAICHS's in-district students would attend were they not in a charter school.

■ Section 47614, subdivision (b) directs school districts to "make *reasonable efforts* to provide the charter school with facilities *near* to where the charter school wishes to locate."[13] (Italics added.) Although the Regulations lack guidance,[14] nothing in this statute mandates that districts place charter schools where they want. To the contrary, section 47614, subdivision (b) only directs school districts to make "*reasonable efforts,*" and then only to locate the charter school "*near*" where it wishes. "According to the Department[ of Education], its implementing regulation [citation] 'specifically does not provide any guidance' about what constitutes such reasonable efforts, because 'the statutory language provides a balance between favoring charter school students and favoring students in district-operated programs.' " (*Ridgecrest, supra,* 130 Cal.App.4th at p. 1000.)

The District made reasonable efforts to provide LAICHS with facilities in the area LAICHS wished to be placed, namely at or near Franklin High School. The District canvassed the high schools in northeast Los Angeles, and Belmont High School is "*near*" to LAICHS's preferred area. (§ 47614, subd. (b).) Belmont is located in local district 4, just as Franklin High School is. Belmont lies only three miles outside the geographic area identified by

---

[13] The statute directs school districts not to move a charter school unnecessarily. (§ 47614, subd. (b), last cl.) There is no question of "moving" LAICHS in this appeal, as it was not located in a district-run school at the time of its appeal, and its placement here is the result of LAICHS's facilities request, not an effort of the District to move LAICHS from its current location.

[14] Regulations section 11969.6 states: "A school district may satisfy the requirements of Education Code section 47614 by providing facilities that are located outside the school district's boundaries, subject to other provisions of this article and subject to the restrictions on location of charter schools established in Education Code sections 47605 [(process for petitions to establish charter schools)] and 47605.1 [(locations for charter schools)]. No school district is required to provide facilities that are located outside the school district's boundaries to a charter school."

LAICHS in its facilities application. Belmont is closer to the geographic area LAICHS desired than Wilson High School, another comparison school, and Marshall High School, one of the schools LAICHS named as an alternative. Meanwhile, all of the high schools in the comparison group, or in local districts 4 and 5 near LAICHS's requested area, were operating at or above capacity. Only Belmont met all of the Proposition 39 factors. Furthermore, the District made all too clear how severely disruptive it would be at Franklin High School to place 157 LAICHS students in eight contiguous classrooms in the middle of the school year. Given the evidence the District provided in its return on the writ, the record here shows that the District balanced the needs of both LAICHS's students and those in the district-run schools, and belies LAICHS's assertion that the District ignored its location request.

More to the point, section 47614, subdivision (b) does not entitle LAICHS to facilities in the specific location it desires, if so doing would favor charter school students over other district students. Proposition 39 requires that facilities "should be shared *fairly* among all public school pupils, including those in charter schools." (§ 47614, subd. (a), italics added.) The Regulations state that "[i]n evaluating and accommodating a charter school's request for facilities pursuant to Education Code section 47614, the charter school's in-district students must be given the *same* consideration as students in the district-run schools, subject to the requirement that the facilities provided to the charter school must be contiguous." (Regs., § 11969.2, subd. (d), italics added.) To move large numbers of students in a district-run school to new campuses and force teachers to travel in the midst of an academic year, just to provide LAICHS eight contiguous classrooms in the school in which it wants to be placed, would put LAICHS's needs over those of the Franklin High School population and would not "strike a fair balance between the needs of the charter school and those of the district-run schools." (*Ridgecrest, supra*, 130 Cal.App.4th at p. 1006.) A holding that the District must provide facilities a charter school requests, on demand and without regard to overcrowding or the impact on other public school students, would tip the balance too far in favor of the charter school.

In sum, the District's return on the writ was sufficiently factual and thorough for us to determine that the District adequately considered all the relevant factors, and in particular, capacity and LAICHS's location request (see § 47614, subd. (b)), and demonstrated a rational connection between those factors and its Proposition 39 offer. The District acted well within the bounds of its discretion and in compliance with the writ's directives when it offered LAICHS space at Belmont High School to avoid displacing hundreds of other students from their neighborhood schools. (*Sanders v. City of Los Angeles, supra*, 252 Cal.App.2d at pp. 489, 490.) The trial court did not err in ruling that the District fully complied with the writ.

5. *The ruling on the facilities cost is not ripe for review.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The order discharging the writ is affirmed. The Los Angeles Unified School District shall recover costs.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied November 13, 2012.

---

[*]See footnote, *ante*, page 1348.