[Civ. No. 41931. Second Dist., Div. Four. July 18, 1974.]

ADOLPH B. MELENDRES, Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

LOS ANGELES FIRE AND POLICE PROTECTIVE LEAGUE et al.,
Plaintiffs and Respondents, v.
CITY OF LOS ANGELES et al., Defendants and Appellants;
PROFESSIONAL FIREFIGHTERS, INC., LOCAL 112,
Intervener and Respondent.

■■■■■■■■■■■■

**COUNSEL**

Burt Pines, City Attorney, John A. Daly, Lawrence L. Hoffman and Jack L. Wells, Assistant City Attorneys, and John B. Rice, Deputy City Attorney, for Defendants and Appellants.

Mohi, Morales & Glasman, Frank C. Morales, Lemaire & Faunce, Cy H. Lemaire, Steven N. Katznelson, Kurlander, Solomon & Hart, Stephen Warren Solomon and Ronald L. Gould for Plaintiff and Respondent and for Plaintiffs and Respondents.

No appearance for Intervener and Respondent.

**OPINION**

**COLE, J.**[*]—

### Nature of the case

Petitioners below are a class consisting of the sworn members of the Los Angeles Police and Fire departments. By consolidated petitions for writs of mandate[1] they sought to compel the City of Los Angeles and its officials to pay to them salary increases for the 1971-1972 fiscal year of 7.837 percent above the wages being paid on June 30, 1971.

Specifically at issue is the question whether the city is obligated by reason of various municipal charter and code provisions to pay the policemen and firemen (sometimes hereinafter referred to as "sworn personnel") an

---

[*]Assigned by the Chairman of the Judicial Council.

[1]In one action Adolph B. Melendres, a Los Angeles police officer, brought a class action on behalf of all policemen and firemen in the City of Los Angeles naming as defendants the city and its council. In the other action the Los Angeles Fire and Police Protective League, an unincorporated association whose membership consists of sworn members of the fire and police departments of the city, joined as petitioners with seven individuals who are policemen or firemen for the city. The league also sued on behalf of a class consisting of all sworn policemen and firemen and named as defendants the city, its council and various of its officers. In each of the two actions the Professional Fire Fighters, Inc., Local 112, an incorporated employee organization whose members are Los Angeles firemen, was permitted to intervene. The two actions below were consolidated for trial and one judgment was entered. The intervener has not made an appearance on this appeal. When referring to Melendres, the League, Professional Fire Fighters, Inc., and the classes they purport to represent collectively, we will use the term petitioners. Reference to "the city" or to Los Angeles will include the other named defendants below.

annual salary adjusted to reflect prevailing wages paid generally in private industry. The trial court determined in favor of petitioners. This appeal is from a judgment ordering that a peremptory writ of mandate issue. We agree with the result reached by the trial court but for reasons different from those adopted by it. We conclude that upon the facts presented in this case, the city is bound by the provisions of section 425 of its charter to pay the salary increases in question. Accordingly, we modify that portion of the judgment which declares the rights and duties of the parties, and affirm.

To understand the basis of our decision, it is necessary to examine applicable Los Angeles City Charter and ordinance provisions, and to contrast the situation presented here with that found to exist in the previous decisions of *Forbes* v. *City of Los Angeles* (1965), District Court of Appeal, Second District No. 28119, certified for non-publication (hereinafter "*Forbes*"),[2] and *Sanders* v. *City of Los Angeles,* 3 Cal.3d 252 [90 Cal. Rptr. 169, 475 P.2d, 201].

### City charter and ordinance provisions

Section 33 of the Los Angeles City Charter provides in relevant part that "the Council . . . shall fix the salaries of all officers and employees except as otherwise provided in this charter. . . ." Section 425 states in part that "In fixing the compensation to be paid to persons in the city's employ, the Council and every other authority authorized to fix salaries or wages, shall, in each instance, provide a salary or wage at least equal to the prevailing salary or wage for the same quality of service rendered to private persons, firms or corporations under similar employment, in case such prevailing salary or wage can be ascertained." Section 4.63 of the administrative code of the city requires the city administrative officer

---

[2]On January 1, 1974, rule 977 of the California Rules of Court became effective. It states, as to civil matters, that an opinion not published in the official reports shall not be cited by a court or by a party in any court action or proceeding except when the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel.

We may cite *Forbes* under the circumstances prevailing in this case. Not only has its collateral estoppel effect been pleaded by the city but, as will be seen, it has been cited and distinguished by our Supreme Court in *Sanders* v. *City of Los Angeles,* 3 Cal.3d 252 at pages 256 and 259-260 [90 Cal.Rptr. 169, 475 P.2d 201]. (Hereinafter called *Sanders* II to distinguish it from a prior decision, *Sanders* v. *City of Los Angeles* (1967) 252 Cal.App.2d 488 [60 Cal.Rptr. 539], hereinafter called *Sanders* I.) *Forbes* was a proceeding on behalf of firemen and policemen to compel the city to provide compensation, under section 425, for the fiscal year 1962-1963. The Court of Appeal held that the evidence before the city council supported the council's finding that there was no similar employment in private industry requiring the same quality of service, and upon that ground the petitioners were denied relief.

to make an annual salary survey containing findings on prevailing salaries or wages of positions in a representative sample of business establishments in the municipal area of Los Angeles and of positions in other governmental agencies which have positions comparable to those in the city service. Under this section, the report of the administrative officer is also to include his "recommendations, if any, for changes in salary schedules applicable to all class of positions in the city service." Section 4.63 further provides that on preparing his recommendations for changes in salary schedules the administrative officer is to adjust the salary of the "bench mark jobs" used in the salary survey, in accordance with a method described in section 4.160(b)(5) of the code for adjusting the base amount used in recommending salaries for sworn personnel.

The survey referred to in section 4.63(b) is one that is carried out annually in order to determine the prevailing salary or wages required to be paid under section 425 of the charter. This survey had been carried out for many years on a joint basis by the city, the County of Los Angeles, the Los Angeles City School District and the Los Angeles City Housing Authority. It is a survey of jobs in private industry which have counterparts in governmental service. The positions surveyed are referred to as "bench mark jobs." The last few surveys involved 60 of such jobs. The great bulk of the positions in the civilian service of the city do not compare directly with civilian positions in private employment. Salaries for these noncomparable city civilian jobs are established by an "in-lieu," or extrapolation, process based upon the bench mark jobs or positions. Adherence to this procedure, followed by the city for many years, was found to be fair and adequate and was approved in *Sanders* I, where the Court of Appeal held the city legally bound to pay prevailing wages to civilian employees.

Section 4.160, dealing with pay for sworn personnel, requires that the administrative officer "in connection with his annual report on the salary survey made by him pursuant to the provisions of section 4.63 . . . make a report, together with recommendations for changes, if any, on the salaries applicable to all classes of positions, the salaries of which are fixed for members of the Fire Department and Police Department. Such recommendations shall be based on the trend of wages in private industry, as shown by such salary survey." Identical language (except for an updating of the reference to section 4.63, inserted when the latter was enacted) has appeared in section 4.160 and its predecessor since 1956.

Section 4.160 also contains a formula to be used by the city administrative officer in computing the trend of wages. This formula, as amended from time to time, has been in existence for a number of years.

*The Jacobs Plan and the events of 1971*

The last amendment which is relevant here was inserted by ordinance No. 141416 which was enacted in 1970 and became operative in January 1971.

The latter ordinance amended various parts of the administrative code including sections of chapter 3 of division 4 so as to implement the "Jacobs plan." The Jacobs plan was the outgrowth of a contract entered into by the city and The Jacobs Company, Inc., by which the latter developed a job evaluation and pay plan and conducted a classification review covering the sworn personnel employed by the city.

In contracting with the Jacobs company for the study which led to the Jacobs plan, the city required the company to provide a plan under which the city would have a method of ascertaining wages for sworn personnel that bore a reasonable relation to the prevailing wages paid to civilian employees with private industry job counterparts.[3] The city administrative officer transmitted a preliminary report concerning the Jacobs plan to the city council in which he stated: "Adoption of the Jacobs plan would, we believe, fully comply with Charter requirements and will enable the City to set the salaries for all classes—not just the bench mark classes—based on prevailing rates in private firms." The Jacobs company conducted elaborate studies, referred to at length in the evidence, and submitted various reports to the city. These reports recommended a reclassification of the various positions in the police and fire departments. They also suggested the adoption of a "factor-point" plan by which the salaries of sworn personnel logically could be related internally to each other. The trial court found that the factor-point system was designed to obtain a sound method of providing continuous prevailing salaries or wages for sworn personnel, that would bear the same reasonable relationship to the prevailing salaries or wages of civilian personnel established by use of bench mark positions that prevailing wages for civilian employees of the city who have no private industry counterparts bear to the bench mark positions. This finding has support in the evidence.

---

[3]The contract obligated Jacobs to provide the following services, among others:
"7. Analysis, summarization and application of data on prevailing salaries paid in community as revealed through the Joint Community Salary Survey, together with the gathering and application of such supplemental salary data as the Consultant deems necessary to provide a basis for the development of the pay plan.
"8. Preparation of appropriate wage and/or salary curve or curves based on prevailing rates of pay in order to provide for the proper relationship of pay with position values as determined by the application of the evaluation plan.
"9. Preparation of a recommended pay plan with salary schedules for all positions to reflect prevailing rates and to assure like pay for like work."

At the same time that the Jacobs company was working on the police and fire department survey, it conducted a separate survey for civilian employees of the city. The recommendations of the report for civilian personnel were not adopted by the city council. Most of the report dealing with sworn personnel was adopted and that adoption was reflected in ordinance 141416.

Ordinance 141416 made numerous changes and additions to various parts of the administrative code, all designed to make sure that prevailing wage recommendations would be made pursuant to the Jacobs plan. For example, as recommended by The Jacobs Company, Inc., the ordinance established 26 classes of positions in the police department and 14 in the fire department with various pay grades in each class. The factor-point method was provided for and salaries of sworn personnel were preliminarily adjusted upward as of January 1, 1971, to the levels found appropriate by the Jacobs survey.

On April 9, 1971, and pursuant to the requirements of sections 4.63 and 4.160 of the administrative code, the administrative officer reported to the city council his recommendation for salary increases to take effect on July 1, 1971. His recommendation was based on the calculations made pursuant to the formula set forth in section 4.160. The recommendation was for a pay increase of 7.837 percent. The city council, however, passed an ordinance providing for a 3.75 percent increase. It also passed an ordinance which would have repealed those parts of section 4.160 which established the formula to be followed by the administrative officer in making his recommendations to the council. Each of these ordinances was vetoed by the mayor. The council subsequently adopted an ordinance granting a wage increase in the amount of 5.5 percent to all but the higher ranks of sworn personnel. That increase became effective on November 15, 1971, following the expiration of a presidential freeze on prices and wages which had been imposed for a short while.

On June 29, 1971, the council adopted a resolution to the effect that there are no positions in the employment of the city occupied by sworn personnel "in which there is rendered the same quality of service as is rendered to private persons, firms, or corporations under similar employment for which a prevailing salary or wage can be ascertained." If supported by the evidence, this finding would, by the language of section 425 of the charter, itself render the section inapplicable to sworn personnel. We find nothing in the evidence to support this finding.

*Action of the trial court*

Petitioners pleaded a variety of legal theories in the trial court.[4] The reasoning and findings of that court are not fully consistent with any of them. Two of the League's causes of action asserted in effect that since the decision in *Forbes* and as a result of the enactment of ordinance 141416 the city had now adopted a method whereby the work done by sworn personnel could be found to be of the "same quality of service" as that done in civilian jobs and that, accordingly, section 425 of the charter obligated the city to pay the prevailing wages computed by the administrative officer and recommended by him to the council. Payment of the amounts due was sought, as was declaratory relief. In another cause of action the League incorporated the vested right argument (fn. 4, *supra*) and added the allegation that the city council's failure to provide salaries in accordance with section 4.160 was "arbitrary, capricious and so palpably unreasonable as to constitute an abuse of discretion as a matter of law." The complaint of the intervenor likewise alleged that the city was obligated under section 425 to pay prevailing wages to persons performing the same quality of service as is performed by private individuals.

In its answers to the respective complaints, the city urged that, because of *Forbes,* petitioners were collaterally estopped to assert their claims.

In its judgment the trial court declared that "(e) The Council of the City of Los Angeles had adopted a fair and adequate procedure, through Section 4.160 of the Administrative Code, as an in-lieu or indirect method for establishing the wages and salaries of firemen and policemen to bear a reasonable relationship with the wages and salaries of the City's civilian employees that are fixed and determined by the prevailing wages and salaries being paid in private industry. The yearly maintenance formula provided in said Section 4.160 is mandatory upon the City, so long as the salaries and wages of the City's civilian job classes that have no comparable counterparts in private industry are fixed by in-lieu or indirect methods under Section 425 of the Charter of the City of Los Angeles in order to

---

[4]We need not linger over two of the contentions. Melendres' claim for recovery was based on an implied contract theory. This same theory was, in effect, one of those asserted by the League. (The latter's first cause of action alleges that services were rendered pursuant to the applicable ordinance and that "vested rights" were thereby acquired.) The League also argued that the action of the mayor in vetoing the 3.75 percent increase which was to have commenced on July 1, 1971, was invalid because the mayor lacked the power to veto the ordinance providing the increase. The trial court decided against each of these contentions; the parties do not raise them on appeal and we need not consider them further.

have such salaries and wages bear a reasonable relationship to the wages and salaries of the City's civilian employees whose jobs have comparable counterparts in private industry and whose salaries are thus determined by the prevailing wage scale in private industry pursuant to Section 425 of the City's Charter." (Judgment, paragraph 1(e).)

The court further declared that section 4.160 constituted the only procedure which the city has adopted to insure that the wages of sworn personnel bear a reasonable relationship to those of civilian employees. The judgment stated: "Whether such employees occupy job classes that have comparable counterparts in private industry or do not have comparable counterparts in private industry, that procedure has been implemented through the utilization of the classification and compensation report of The Jacobs Company, Inc., and amendments thereto made by the Council. The Council cannot ignore the only evidence before it. However the City Council is not precluded from making additional salary or wage adjustments for firemen and policemen not required by said Section 425 of the City Charter." (Judgment, paragraph 1(f).)

The trial court found that in adopting the Jacobs plan the city council "adopted an appropriate administrative procedure which enabled it to ascertain what was being paid in private industry, as a base, for determination of what should be paid for the services rendered by firemen and policemen in the employ of the City . . . ," together with formulae and procedures to maintain and keep current said "appropriate administrative procedure." In addition, the court found that the Jacobs plan "is superior to, and more accurate than, the extrapolation procedures applied" to determine prevailing wages to be paid to civilian employees whose positions were not directly comparable to those in private industry. These findings are supported by the evidence.

*Impropriety of deciding this case on equal protection principles*

It is apparent to us that the trial court decided this case in large part on equal protection of the law principles. While finding as set forth above, with respect to the superiority of the factor-point system of the Jacobs plan, the trial court's judgment limited the obligation of the city to pay prevailing wages to sworn personnel to the period of time when such wages are paid to civilian personnel. The court found that it was unreasonable, arbitrary and capricious to fix civilian wages by an extrapolation method while refusing to do the same thing for sworn personnel.

Insofar as equal protection principles governed the trial court's decision,

at least some of the parties were taken by surprise. After the court's memorandum opinion was issued, indicating the approach intended to be taken, both counsel for Melendres and counsel for the city moved to reopen the case for the purpose of additional testimony.[5] After argument, the motion was denied. We believe that this ruling was in error and that if the trial court intended to rest its decision on an equal protection basis, it should have allowed the reopening.

However, "The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey* v. *Southern Pacific Co.*, 116 Cal. 325, 329 [48 P. 117]). Our discussion above shows that such a theory exists here.[6]

### Applicable case law

Prevailing wage provisions such as those found in section 425 of the charter are mandatory as to employees covered by them. (*Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626 [12 Cal.Rptr. 671, 361 P.2d 247].) Such provisions are to be liberally construed. (*Walker*, at pp. 634, 635, citing *Goodrich* v. *City of Fresno*, 74 Cal.App.2d 31, 36 [167 P.2d 784].) The legislative policy underlying the "prevailing wage doctrine" is "to insure that public employees performing services substantially similar to those performed by employees in private industry will be paid substantially equal wages, so that competent and qualified persons will be attracted to government service." (*Id.* at pp. 639-640.)

The phrase "the same quality of service" appearing in section 425 refers to the same class, nature, level or kind of service and not to the relative efficiency and competence or performance of the employees. (*Id.* at pp. 637-638.)

---

[5] Melendres wanted to bolster the record with evidence of the noncomparability of civilian jobs in the employ of the city for which prevailing wages were nevertheless paid. Los Angeles wanted to put on evidence that fringe and other benefits paid to sworn personnel more than compensated for any disparities between their wages and those of civilian employees.

[6] In light of our conclusion and the fact that the parties did not have an opportunity to present evidence dealing with equal protection concepts, we do not determine whether that theory of the trial court is sound.

In the fiscal year 1962-1963, the Los Angeles City Council did not provide for the payment of prevailing wages recommended to it by the city administrative officer under the formula set forth in the predecessor to section 4.160 of the administrative code. Litigation followed, *Forbes* being an action brought on behalf of sworn personnel and *Sanders* being brought on behalf of civilian personnel.

As to sworn personnel, the city council found that there was no job classification in which there was rendered the same kind or nature of service as is rendered to private persons, firms or corporations under similar employment for which a prevailing salary or wage could be ascertained. Applying the substantial evidence rule, the trial court in *Forbes* upheld the city's finding in this respect and the Court of Appeal affirmed on that basis. This finding was supported by a report to the council by the administrative officer setting forth in detail the facts which supported this conclusion. (The report is quoted in the Court of Appeal's opinion in *Forbes* and takes up more than one-third of the opinion.) Responding to an argument that the predecessor ordinance to present section 4.160, used by the city administrative officer to make his recommendations to the council, bound that body to adopt the mathematical result produced by the formula embodied in the ordinance, the court stated that the ordinance "was for the use of the City Administrative Officer" and "does not necessarily apply to the Council." It pointed out that the council had acted under section 33 of the charter and that section 425, the prevailing wage provision, did not constitute the entirety of the city's salary fixing authority. The court affirmed the trial court judgment in favor of the city stating this result "[did] not, as suggested by appellants, have the effect of nullifying section 425. Such determination within the proper scope of appellate review is based on the record before this court which shows that there was no abuse of the discretionary powers vested in the Council or in the factual ascertainments made by that body. . . ."

In contrast, *Sanders* reached a different result. *Sanders* I mandated the city to follow its long-standing procedure and determine by an in-lieu or extrapolation process salaries for city civilian employees whose jobs were not bench mark jobs and thus did not have direct counterparts in private industry. *Sanders* II affirmed the ultimate trial court order requiring the city to pay to these employees the salary increases determined by the extrapolation method. In reaching this conclusion the Supreme Court held that section 425 of the charter was applicable to the civilian employees whose salaries were thus determined.

Since section 425 could not come into play unless employees covered by it render the "same quality of service" as rendered by private employees

under similar employment, *Sanders* II must be read as a square holding that, fairly applied, the extrapolation method is a means of determining a prevailing wage in private industry *for the same quality of service* as is rendered by the civilian employees to whose jobs the extrapolation method applies. *Sanders* II is thus not in conflict with *Forbes,* but rather simply is predicated upon a different factual base.

■ Given the supported finding that the methodology of the Jacobs plan provides a means "superior to, and more accurate than" the extrapolation method approved in *Sanders* for determining prevailing wages for employees whose positions may not be directly comparable to those in private industry, it follows that prevailing salaries or wages for the same quality of service rendered to private employers now can be ascertained for sworn personnel. Accordingly, on these facts their pay is governed by section 425 of the charter and they are entitled to receive salaries so computed for the 1971-1972 fiscal year, together with interest on the unpaid amounts.

The city contends that the decision in *Forbes, supra,* operates as a collateral estoppel to prevent the result reached by the trial court. The trial court concluded that *Forbes* was "neither a bar by its adjudication nor a collateral estoppel." We agree with this conclusion.

■ It is true that a prior judgment "operates as an estoppel or conclusive adjudication as to such issues in [a second suit between the same parties but based upon a different cause of action] as were actually litigated and determined in the first action." (*Todhunter* v. *Smith,* 219 Cal. 690, 695 [28 P.2d 916]; *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control,* 57 Cal.2d 749, 757 [22 Cal.Rptr. 14, 371 P.2d 758].)

But if new facts or changed circumstances have occurred since the prior decision, the former judgment may not bar a later suit. (See 4 Witkin, Cal. Procedure (2d ed.) pp. 3349-3350.) Assuming that the parties to this action are the same as those in *Forbes* (see 4 Witkin, Cal. Procedure (2d ed.) p. 3363 as to application of collateral estoppel to class actions) change of circumstances precludes use of the doctrine. (*People* v. *Ocean Shore Railroad,* 32 Cal.2d 406, 418 [196 P.2d 570, 6 A.L.R.2d 1179].)

As we have pointed out, the trial court and the Court of Appeal in *Forbes* ruled against the petitioners upon the ground that the evidence before the city council at that time supported the finding of the city council that no prevailing salary could be ascertained for the fire and police services. In the present case the trial court's findings, which we have described above, showed that, given the Jacobs method of indirectly determining prevailing

wages to be paid to sworn personnel, facts now exist rendering the *Forbes* conclusion inapplicable. Therefore, *Forbes* presents no impediment to the prosecution of this action.

## Conclusion

The trial court was requested by petitioners to make an express finding that the sworn personnel rendered "the same quality of service" as did those in civilian employ whose wages were resorted to in connection with the Jacobs survey. The trial court declined to make such a finding. We think the absence of that specific declaration by the trial court is immaterial.

The trial court has found that the indirect method provided for in the Jacobs plan and enacted into law by the city council for the determination of prevailing wages of sworn personnel is a fair and accurate method, superior to that used for civilian employees. The method used for civilian employees has been found by the Supreme Court in *Sanders* II to bring those workers within the ambit of section 425. By similar token, the "superior" method, developed since the decision in *Forbes,* for police and fire personnel and adopted by the city, must now be held to bring them within the mandate of section 425 of the city charter.

It is unnecessary to remand this case to the superior court for further trial or for the adoption of different findings. The trial court's findings, insofar as they are inconsistent with the views expressed in this opinion, reflect only some legal conclusions which may be disregarded. The findings of the trial court in other respects point the way to the judgment which the law requires.

The form of the judgment, insofar as it declares the rights of the parties, requires some modifications, however.

Subparagraphs (e), (f) and (g) of paragraph 1 of the judgment are stricken and the following language is substituted:

(e) Effective January 1, 1971, the Council adopted a fair and adequate in-lieu or indirect method for establishing the compensation of firemen and policemen equal to the prevailing salary or wage for the same quality of service rendered to private persons, firms or corporations under similar employment.

(f) The resolution of the City Council, adopted June 29, 1971, finding "that there are no positions in the City's employ occupied by sworn members of the Los Angeles Police Department or the Los Angeles Fire

Department in which there is rendered the same quality of service as is rendered to private persons, firms, or corporations under similar employment for which a prevailing salary or wage can be ascertained" is not supported by any evidence or by any facts officially known to the Council. Facts then officially known to the Council showed that such prevailing salary or wage could be ascertained by an in-lieu or indirect method. Such an in-lieu or indirect method is a proper means of ascertaining prevailing wages within the meaning of section 425 of the City's charter.

(g) The Council of the City of Los Angeles is under a duty to apply the adjustment formula computed under Administrative Code section 4.160 to adjust the compensation of firemen and police officers in conformity with the trend in wages in private employment, so as to provide compensation for the fiscal year 1971-1972 in conformity with the requirement of section 425 of the city charter.

As so modified, the judgment is affirmed.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied August 13, 1974, and appellants' petition for a hearing by the Supreme Court was denied October 2, 1974. Mosk, J., was of the opinion that the petition should be granted.