[Civ. No. 50628. First Dist., Div. Three. July 6, 1982.]

SAN FRANCISCO POLICE OFFICERS ASSOCIATION et al., Plaintiffs and Respondents, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Appellants;
SAN FRANCISCO FIRE FIGHTERS LOCAL 798, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO, Intervener and Respondent.

COUNSEL

George Agnost, City Attorney, Michael C. Killelea, Deputy City Attorney, for Defendants and Appellants.

Stephen Warren Solomon, Ralph B. Saltsman, Carole A. Solomon and Emanuel Cowitt for Plaintiffs and Respondents.

Duane W. Reno and Davis, Cowell & Bowe for Intervener and Respondent.

OPINION

**SCOTT, Acting P. J.**—The City and County of San Francisco and others appeal from a judgment granting petitions for writ of mandate; petitioners were the San Francisco Police Officers Association and the San Francisco Fire Fighters Local 798. The principal question is whether the city's board of supervisors must include a wage increase granted to Los Angeles police and fire personnel, effective July 1, 1977, in the data upon which the board based the compensation fixed for San Francisco police and fire personnel for the fiscal year July 1, 1977, through June 30, 1978.

I

The salaries of San Francisco's police and fire department members are determined pursuant to section 8.405 of the city's charter. Not later than August 1 of each year, the civil service commission is to survey and certify to the board of supervisors "rates of compensation paid police officers or patrolmen" employed in police departments in all cities of 350,000 population or over in the state. The rates contained in the certification shall be the "average of the maximum rates paid to each police officer or patrolman classification performing the same or essentially the same duties as police officers or patrolmen" in San Francisco. The board of supervisors must then fix rates of compensation for members of the police department at a rate which is the "average maximum wage paid" in the cities surveyed. (Charter of the City and County of San Francisco, § 8.405, subd. (a).) A similar provision regulates the fixing of compensation for firefighters. (*Id.*, § 8.405, subd. (c).)

In accordance with those requirements, in 1977 the civil service commission sent questionnaires to Los Angeles, San Diego, Long Beach, Oakland, and San Jose to determine the rates of compensation being paid to police and fire personnel in those cities as of August 1 of that year, and a report was prepared based on response to those questionnaires. At the time of the survey Los Angeles police and fire personnel were still being paid salaries set for fiscal 1976-1977; however, both Los Angeles and San Jose were in the process of salary negotiations.

On August 1, the commission's report was certified to the board of supervisors. On August 25, based on that report, the board enacted Ordinance No. 383-77, establishing rates of compensation for police and firefighters retroactive to July 1, 1977.

In the meantime, Los Angeles city officials and administrators had been proceeding to determine what salaries were to be set for their police and fire personnel for the fiscal year 1977-1978. According to the Los Angeles City Charter, its city employees were entitled to "a salary or wage at least equal to the prevailing salary or wage for the same quality of service rendered to private persons, firms or corporations under similar employment, in case such prevailing salary or wage can be ascertained." (Los Angeles City Charter, § 425.) In April of 1977, as was required by the charter and certain Administrative Code sections then in effect, the city's administrative officer had conducted a salary survey and reported to the city council that "the trend of wages, computed in accordance with Administrative Code instructions, indicates a salary adjustment of 7.274 percent above 1976-1977 salary levels" for members of the police and fire departments.

After submission of this report, Los Angeles city officials and representatives of police and fire employee organizations conducted meet and confer sessions. In late August and early September, memoranda of understanding were entered into which incorporated the recommended salary increases. In September and November, the city council enacted salary ordinances fixing salaries for Los Angeles police and fire personnel which included the 7.274 percent increase, retroactive to July 1, 1977.

In early 1978, the San Francisco Police Officers Association and an individual officer, on behalf of all city police officers, petitioned for a writ of mandate, seeking to have the board of supervisors include the Los Angeles increase in the data upon which it had based San Francisco police salaries for fiscal 1977-1978. The San Francisco Fire Fighters Local 798, International Association of Fire Fighters, AFL-CIO, was granted leave to intervene and file a complaint in intervention and petition for writ of mandate, urging similar relief for the city's firefighters. Judgment was entered granting the writ of mandate, and this appeal followed.

## II

At trial, respondents' theory was that although Los Angeles employees were not in fact receiving the 7.274 percent pay increase on August 1, 1977, as of July 1, 1977, they were entitled to at least that increase as a matter of law; accordingly, the San Francisco Civil Service Commission should have included the increase in its computations for the

board of supervisors. The trial court agreed and concluded: (1) the 7.274 percent salary increase set forth in the administrative officer's April 1977 report was binding on the City of Los Angeles and owed as a matter of law to its police and fire personnel; (2) effective July 1, 1977, Los Angeles police and fire personnel were paid that salary increase; (3) the San Francisco Civil Service Commission erred when it failed to include that increase in computing salary for San Francisco personnel; (4) San Francisco's Board of Supervisors was required by the city's charter to include the Los Angeles increase in fixing San Francisco's compensation; and (5) as a matter of law, "paid," as used in charter section 8.405, is "equivalent to a fixed and enforceable debt."

■ First, appellants contend the trial court erred in concluding the salary increase recommended in the April report was binding, because salaries for municipal employees are not fixed until a legislative body enacts an ordinance establishing a rate of compensation.

We agree that the ultimate act of fixing compensation for municipal employees is legislative in character. (*Bagley* v. *City of Manhattan Beach* (1976) 18 Cal.3d 22, 25 [132 Cal.Rptr. 668, 553 P.2d 1140]; *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 921 [120 Cal.Rptr. 707, 534 P.2d 403].) Nevertheless, when a legislative body has established standards governing the fixing of compensation, it may delegate functions relating to the application of those standards. (*Bagley* v. *City of Manhattan Beach, supra*, 18 Cal.3d at p. 25.) As we will discuss, during the time involved in this case, the Los Angeles City Council had apparently adopted a method for determining the compensation to which its police and fire personnel were entitled according to its "prevailing wage" standard, and it had delegated the implementation of that method to its administrative officer.

Ordinarily a legislative body retains a considerable degree of discretion in establishing compensation pursuant to a "prevailing wage" provision such as that in the Los Angeles Charter. "[A]s a rule, such charter provisions do not set forth any specific formula by which the prevailing wage is to be determined, but instead leave to the legislating body the choice between the various reasonable alternative means of calculating 'prevailing wages.'" (*City and County of San Francisco* v. *Cooper, supra*, 13 Cal.3d at p. 919.)

In 1977, however, Los Angeles was apparently an exception to that rule. The city's Administrative Code required its administrative officer

to make an annual survey as to prevailing salaries and the "trend of wages" in the area and to make recommendations, if any, for corresponding changes in salaries and wages of all city employees, including police and fire department members. Significantly, the code incorporated a specific formula, a "factor-point method," to be used in establishing prevailing wage recommendations for police and fire department members. (See *Melendres* v. *City of Los Angeles* (1974) 40 Cal.App.3d 718, 722-725 [115 Cal.Rptr. 409].)

In *Melendres* the court held that the Los Angeles City Council was under a duty to apply that formula in adjusting the compensation of its police and fire department personnel. (*Id.*, at p. 732.) In April 1971, based on the formula, the administrative officer recommended an increase in excess of 7 percent for police and fire department members, but the city council adopted an ordinance granting a lesser increase.[1] Police and fire personnel sought by petition for writ of mandate to compel the city to pay the recommended increases, the petition was granted, and the appellate court affirmed. The court concluded that the city council had adopted in its Administrative Code a fair method of indirectly establishing the "prevailing wage" for firemen and policemen, and that it had a duty to apply that method in compensating those employees. (*Id.*, at pp. 731-732.) Accordingly, we must conclude that the City of Los Angeles was obliged to apply that formula in 1977 as well and increase the salaries of its police and fire department members for the fiscal year 1977-1978 in an amount at least as much as that recommended.

Appellants argue that *Melendres* is not determinative in this case because it did not address *when* the recommended increase became a legally enforceable rate of pay for Los Angeles personnel. Appellants urge that because as of August 1, 1977, the Los Angeles City Council had not yet formally adopted the increase by ordinance, the increase was properly excluded from San Francisco's computations. Appellants also argue that the strict rule of construction applicable to statutes awarding compensation for public service and the usual, ordinary meaning of the word "paid" compel the conclusion that San Francisco was obligated to consider only what was being actually paid in Los Angeles as of August 1. We cannot agree.

---

[1] First, the council adopted an ordinance granting a 3.75 percent increase; the council also adopted an ordinance repealing those portions of the Administrative Code establishing the factor-point formula. Each ordinance was vetoed by the mayor. The council then adopted an ordinance granting a 5.5 percent increase. (*Melendres* v. *City of Los Angeles, supra*, 40 Cal.App.3d at p. 725.)

First, the rule of statutory construction upon which appellants rely is applied when a public official seeks extra compensation for acts which are within his or her official duties. (See *County of San Diego* v. *Bryan* (1912) 18 Cal.App. 460, 463 [123 P. 347], citing *Irwin* v. *County of Yuba* (1898) 119 Cal. 686 [52 P. 35].) The rule is otherwise, however, with prevailing wage statutes, which are to be liberally construed in favor of public employees. (*Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 635 [12 Cal.Rptr. 671, 361 P.2d 247]; *Gai* v. *City Council* (1976) 63 Cal.App.3d 381, 388 [133 Cal.Rptr. 753]; *Goodrich* v. *City of Fresno* (1946) 74 Cal.App.2d 31, 36 [167 P.2d 784].) While San Francisco's charter provision does not require its police and firefighters to be paid the prevailing wage in private employment, its reliance on wages paid in Los Angeles makes it at least indirectly a prevailing wage provision and thereby entitled to liberal construction.

Moreover, we find appellants' arguments unpersuasive in light of *Gai* v. *City Council, supra,* 63 Cal.App.3d 381. At issue in *Gai* was a provision in the Fresno City Charter mandating that city employees were not to be paid less than the prevailing wage in comparable private employment. Collective bargaining agreements between private employers and unions authorized an 82 cents an hour increase for pipefitters, to become effective July 1, 1973. The increase did not go into effect, however, because of a federal price and wage freeze, and the city council adopted for its pipefitters the frozen rate actually being paid private pipefitters. Subsequently, the federal government approved a 50 cents per hour increase for private pipefitters, retroactive to July 1, 1973. By petition for writ of mandate, the city's employees then sought the grant of a similar increase. The trial court denied the petition for reasons similar to those urged by appellants in this case. The trial court concluded that under the charter, city employees' pay was to be determined on the basis of rates *actually in effect* and *being paid* in private employment as of the relevant date; that despite the collective bargaining agreement the rate actually being paid was the frozen rate; and that the city was therefore powerless to grant any retroactive increase. (*Id.,* at p. 384.)

Emphasizing that prevailing wage statutes are to be liberally construed in favor of public employees, the appellate court reversed and ordered the city to pay the increase. But for the federal freeze, the prevailing rate as of the relevant date would have been the increased rate agreed to through collective bargaining. The city council should have fixed its employees' rate of pay to include that increase, but suspended

payment of the increase until federal approval was actually obtained. That procedure, the court reasoned, would both carry out the wage parity policy of the charter and enable the city to budget for anticipated costs. (*Id.*, at pp. 388-389.)

The approach suggested in *Gai* should have been utilized by appellants in this case. Here, because of the specific formula incorporated into the Los Angeles Administrative Code, the minimum pay increase to which its police and fire personnel were entitled for fiscal 1977-1978 was actually determined with issuance of the administrative officer's April 1977 report,[2] even though formal action by the city council was required to put that raise into effect. Accordingly, to carry out the wage parity policies of San Francisco's Charter, its civil service commission should have certified the Los Angeles increase in the rates which it certified to the board of supervisors, and the board should have included that increase in the data upon which it relied in fixing compensation for San Francisco's police and fire department members for fiscal 1977-1978. Actual payment of the resulting increase for 1977-1978 could have been delayed until the Los Angeles increase was made official by ordinance.

Appellants' reliance on *Butler* v. *City & County of San Francisco* (1951) 104 Cal.App.2d 126 [231 P.2d 75] is misplaced. *Butler* involved a former provision of the San Francisco Charter requiring that public employees in various crafts were to be paid the wage prevailing as of July 1 for those crafts in private employment within the city and county. On July 7, when the civil service commission certified those prevailing wages to the board of supervisors, negotiations were under way for a pay increase for private sheet metal workers, but no agreement had been reached. Those workers were later granted an increase retroactive to July 1. The court concluded that the time limitations of the charter could not be disregarded, and that city workers were not entitled to a similar retroactive increase. (*Id.*, at pp. 128-136.) In this case, unlike *Butler*, on the date the civil service commission was to certify the rates paid elsewhere, the minimum increase to which Los Angeles police and fire personnel were entitled effective July 1 was known.

Appellants also argue that *Melendres* v. *City of Los Angeles, supra,* 40 Cal.App.3d 718, should not be determinative, because it did not take into account any of the following possibilities: (1) the April survey may

---

[2.]Apparently these Administrative Code sections have now been repealed.

contain mathematical errors which the city council must later correct; (2) a disaster may occur after April, rendering Los Angeles fiscally unable to pay the increase compelled by the survey; or (3) the city council may grant an increase greater than that recommended. First, none of those possibilities happened in this instance. The salary increases enacted by ordinance in September and November of 1977 were exactly those contained in the April report. Moreover, delaying payment of any San Francisco increase until official action by the Los Angeles City Council, the procedure suggested by the court in *Gai*, would have insured against uncertainties of the sort which trouble appellants. Finally, the possibility of a greater increase than that recommended is irrelevant. Respondents agree that *Melendres* did not preclude the Los Angeles City Council from granting its personnel an increase greater than that computed and recommended in April by its administrative officer. However, we hold only that San Francisco's civil service commission and its board were obligated to include the increase recommended in April in their salary computations. Had the Los Angeles City Council decided, after August 1, to grant an increase greater than that recommended in April, that extra increase could not be included in San Francisco's computations. (*Butler* v. *City & County of San Francisco, supra*, 104 Cal. App.2d 126.)

Judgment is affirmed.

Feinberg, J., and Barry-Deal, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 8, 1982.