[L.A. No. 30341. In Bank. Nov. 25, 1974.]

LOS ANGELES CITY AND COUNTY EMPLOYEES UNION, LOCAL 99 et al., Plaintiffs and Appellants, v. LOS ANGELES CITY BOARD OF EDUCATION et al., Defendants and Respondents.

## COUNSEL

Leo Geffner and Geffner & Satzman for Plaintiffs and Appellants.

John H. Larson, County Counsel, and Paul Hanson, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**BURKE, J.**[*]—We are called upon in this case to interpret certain statutory and charter provisions which mandate the payment to public employees of wages and salaries at levels at least equal to the prevailing wages and

---

[*]Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

salaries paid by private employers for similar service. Specifically, we must determine whether these provisions require wage and salary review and adjustment on a more frequent basis than annually. We have concluded that the governing body of a public agency satisfies its obligations under the "prevailing wage" legislation at issue by making annual adjustments, and that the decision to provide more frequent review and salary adjustment rests entirely in the sound discretion of the governing board.

Plaintiff unions (hereinafter petitioners) represent some 6,000 "classified" (i.e., other than certificated teaching and administrative) employees of defendant, the Los Angeles Board of Education. For many years, including the year in question, the board has approved annual prevailing wage increases which were effective as of the first pay period after the beginning of the fiscal year on July 1. In addition, since January 1965, the board has also approved certain *midyear* increases, based upon recommendations made by the Personnel Commission of the Los Angeles Unified School District.[1] These midyear increases were usually, but not always, made effective as of the end of the first pay period after January 1. The board has taken the position that these midyear increases were not required by law, and that only the annual (July 1) increase is mandated by the applicable legislation.

The instant dispute concerns prevailing wage increases approved for the fiscal year commencing July 1, 1971. On June 5, 1971, the board approved an annual increase effective the first pay period following July 1, 1971. Thereafter, on December 22, 1971, the personnel commission recommended to the board certain midyear increases to become effective as of January 16, 1972 (the end of the first pay period after January 1). These recommendations were discussed in lengthy hearings by the board commencing January 6; evidently, objections were raised which involved the fiscal problems of the school district and Phase II of the President's wage-price "freeze." On February 9, 1972, petitioners filed suit for mandate to compel the board to approve the commission's recommendations. Subsequently, on March 9, the board granted the salary increases, to become effective on March 13, 1972. Petitioners asserted, however, that these increases should have been fully retroactive to January 16, 1972, on the basis that once the board was presented with accurate findings regarding the

---

[1]As explained below, one of the statutory functions of a personnel commission is to recommend to the governing board salary schedules for the classified service, which recommendations may be approved, amended or rejected by the board. (Ed. Code, § 13719; see *id.,* § 13701 et seq.)

levels of prevailing wages, the board had no discretion to delay approval of the recommended increases.

The trial court denied relief, ruling that the board had no legal duty to approve more than one annual prevailing wage increase, and that the board did not act unreasonably or abuse its discretion in waiting from January 6 to March 9 to approve the midyear increase, and in refusing to grant a retroactive increase. Petitioners appeal.

We turn first to the statutory and charter provisions on the subject of the payment of prevailing wages. Section 13601 of the Education Code provides that "The governing board of any school district, including city boards of education, shall fix and order paid the compensation of persons a part of the classified service and other employees not requiring certification qualifications employed by the board unless otherwise prescribed by law." Section 13601.5 provides that "In any school district with an average daily attendance of more than 400,000 which includes within its boundaries a chartered city, the charter of which requires the fixing of wages and salaries at levels at least equal to the prevailing salary or wage for the same quality of service rendered to private employers under similar employment when such prevailing salary or wage can be ascertained, the governing board of the district, in fixing the compensation of classified employees, shall fix salaries or wages by the use of the same standard."

Section 425 of the Charter of the City of Los Angeles provides that each city wage-fixing agency "shall, in each instance, provide a salary or wage at least equal to the prevailing salary or wage for the same quality of service rendered to private persons, firms or corporations under similar employment, in case such prevailing salary or wage can be ascertained."

Although neither section 425 of the city charter nor section 13601.5 of the Education Code defines the precise scope of the governing board's responsibility to review and adjust wages and salaries to assure payment of prevailing wages, other statutory provisions make it clear that only an *annual* review and adjustment is required. Thus, section 13602 of the Education Code *permits*, but does not require, the governing board of a school district to increase the annual salaries of noncertified employees at any time during the school year. And the City of Los Angeles, in construing the charter provision quoted above,[2] has declared its policy to be

---

[2]We should, of course, accord great weight to the administrative construction of a charter or statute. (See, e.g., *Riviera* v. *City of Fresno*, 6 Cal.3d 132, 140 [98 Cal. Rptr. 281, 490 P.2d 793].)

"that salary adjustments shall be made only once each fiscal year." (Los Angeles Admin. Code, § 4.63, subd. (a).) Accordingly, the city administrative officer is directed to make salary surveys regarding prevailing wages "at least once each year" and to present his report to the city council "on or before April 10th of each year . . . ." (*Id.,* subd. (b).)

Thus, the cases implicitly assume that a governing board satisfies its obligation under prevailing wage legislation to review and adjust wages and salaries if it does so on an annual basis. (See *Melendres* v. *City of Los Angeles,* 40 Cal.App.3d 718, 723 [115 Cal.Rptr. 409] ["The survey referred to in section 4.63(b) is one that is carried out annually in order to determine the prevailing salary or wages required to be paid under section 425 of the charter"]; cf. *Sanders* v. *City of Los Angeles,* 3 Cal.3d 252, 256-257 [90 Cal.Rptr. 169, 475 P.2d 201]; *Walker* v. *County of Los Angeles,* 55 Cal.2d 626, 632 [12 Cal.Rptr. 671, 361 P.2d 247].) Although it has been held that the governing board *may* provide in advance for a midyear salary adjustment, on the basis that the board "retains its discretionary power to fix compensation at a rate which exceeds the prevailing wage" (*Alameda County Employees' Assn.* v. *County of Alameda,* 30 Cal.App.3d 518, 532 [106 Cal.Rptr. 441]),[3] nevertheless the board discharges its responsibility if it fixes salaries "which are in accord with the salaries prevailing at the time they fix the compensation *for the ensuing fiscal year.*" (*Id.,* pp. 530-531, italics added.)

Moreover, as a practical matter, we should be hesitant to impose upon governing boards an obligation to assure continuous parity between public service and private sector employee wage levels. Such a requirement would cast an intolerable burden upon governing boards to "keep current" in reviewing and adjusting employees' wages; an annual adjustment conforms to customary budgeting and tax levying procedures. ■ We conclude that section 13601.5 of the Education Code contemplates that wage levels be adjusted on an annual basis, although the board may, in its discretion, provide a more frequent adjustment if it determines that such an adjustment would be appropriate.

Petitioners contend, however, that once the personnel commission found that prevailing wage increases were due, and so advised the board, the latter had no discretion to disapprove, or delay payment of, those increases. Petitioners assert that the commission was acting, in essence, as the board's agent in accordance with the prior custom of investigating and recommending midyear increases. They rely upon such cases as *Sanders* v. *City*

---

[3]See also Education Code section 13602, discussed *ante.*

*of Los Angeles, supra,* 3 Cal.3d. 252, and *Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626, in support of their theory that once an accurate factual determination regarding prevailing wage levels has been made, the governing board has a mandatory duty to approve corresponding increases.

The *Sanders* and *Walker* cases, however, are not controlling. Both cases involved the governing board's obligation to approve the *annual* prevailing wage increase contemplated by the Charters of the City and County, respectively, of Los Angeles. Both cases agree that the governing board has a mandatory duty to undertake a review of prevailing wages and, having determined those wages, has the further mandatory duty to pay corresponding wage increases. Neither case suggests, however, that the board is without discretion to deny (or delay) a *midyear* increase despite its knowledge of facts indicating that such an increase might be appropriate.

Furthermore, it should be emphasized that in the instant case the board *did* approve the midyear increases recommended by the personnel commission; petitioners' sole complaint herein is that the board failed to make those increases fully retroactive to January 16 (the first pay period following January 1). Even if we assume arguendo that the board was required to approve the midyear increases, certainly no principle of law required the board to grant full retroactivity. As we stated in the *Sanders* decision, *supra,* "The courts will interfere by mandamus when the action taken by the board is 'so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law.' [Citations.]" (3 Cal.3d at p. 261; see *San Bernardino Fire & Police Protective League* v. *City of San Bernardino,* 199 Cal.App.2d 401, 411 [18 Cal.Rptr. 757].) ■ The record fully supports the trial court's finding that the board acted reasonably in the matter: The board had already approved an annual increase for the fiscal year, and the subject of midyear increases was evidently a controversial one, requiring board hearings and consultation extending to March 9, 1972. Although the board had approved midyear increases in past years, the board had never made such increases retroactive, and during the period from 1965 to 1971, the average delay (from date of receipt of the commission's recommendations to the effective date of the pay increase) was approximately 25 days. Under the circumstances, a delay of 67 days in 1972 (from January 6, 1972 to March 13, 1972) does not appear unreasonable or arbitrary as a matter of law.

It should be kept in mind that it is the function of the board, not the commission, to fix and pay wages and salaries. (Ed. Code, §§ 13601-13602.) The commission's function is to "recommend to the governing

board salary schedules for the classified service. The governing board may approve, amend, or reject these recommendations. . . ." (Ed. Code, § 13719.) In the instant case, the board accepted the commission's recommendation to approve midyear salary increases but rejected the further recommendation to make those raises fully retroactive to January 1. Since the decision to refuse retroactivity was within the board's discretion, and since no abuse of discretion has been shown, the trial court properly denied mandate.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.