[No. B092961. Second Dist., Div. Five. June 19, 1996.]

CALIFORNIA TEACHERS ASSOCIATION et al., Plaintiffs and Respondents, v.
DONALD W. INGWERSON et al., Defendants and Appellants.

**COUNSEL**

De Witt W. Clinton, County Counsel, and Peter J. Gutierrez for Defendants and Appellants.

Charles R. Gustafson, Beverly Tucker, Rosalind D. Wolf, Robert E. Lindquist, Rothner, Segall & Bahan and Glenn Rothner for Plaintiffs and Respondents.

**OPINION**

**TURNER, P. J.—**

### I. INTRODUCTION

Donald W. Ingwerson, the Los Angeles County Superintendent of Schools (superintendent), and the Los Angeles County Office of Education (county), appeal from a judgment entered in favor of the California and Montebello Teachers Associations (the unions). The unions filed a mandate petition to compel the superintendent and the county to develop and adopt a fiscal plan and budget for the Montebello Unified School District (the district) for the 1994-1995 school year which did not include a reduction in pay or freezing of salary schedule step and column increases for certified employees. The trial court granted the unions' petition. We reverse the judgment.

### II. BACKGROUND

On January 30, 1995, the unions filed a mandamus petition pursuant to Code of Civil Procedure section 1085, for the benefit of members of the unit

of certified employees that they represent as the exclusive representative in the district. The petition sought a peremptory writ of mandate ordering the superintendent and the county to immediately develop and adopt a fiscal plan and budget for the district for the 1994-1995 school year.

The petition alleged the county had the legal duty and responsibility to carry out the orders of the superintendent and to supervise the financial affairs of the public school districts. The district and the unions entered into a collective bargaining agreement effective July 1, 1991, to June 30, 1994, which provided for payment of wages for certified bargaining unit members. On May 9, 1994, the unions and the district entered into negotiations on a successor agreement pursuant to the provisions for meeting and negotiating as set forth in the Educational Employment Relations Act, Government Code section 3540 et seq. During the negotiations, the district proposed a provision which called for "step/column freezes" and a 5.3 percent salary rollback for teachers. After the negotiations reached an impasse on September 7, 1994, the matter was submitted to mediation and factfinding. At the time the petition was heard, the parties were awaiting the decision of the fact finder following a hearing.

The petition further alleged the district was required by Education Code section 42127 and did adopt a budget for the 1994-1995 school year before July 1, 1994. The budget included step/column freezes and a 5.3 percent salary rollback for teachers. By August 10, 1994, the county had reviewed the budget and made its recommendations in writing to the district. The recommendations provided in part: "It is not reasonable nor is it advisable for the district to assume these salary proposals are an accomplished fact. Therefore, until negotiations are concluded, the district must increase its budget to include the full cost of salary expenditures *based on current compensation schedules*." (Italics in original.) On September 8, 1994, the district adopted a revised budget which failed to include the full cost of salary expenditures based on the current compensation schedules as recommended by the county.

On October 10, 1994, the county sent letters to the district disapproving the September 8, 1994, spending plan, and to the State Department of Education requesting the formation of a budget review committee. The budget review committee issued a report on November 15, 1994. On December 13, 1994, the State Superintendent of Public Instruction disapproved the district's budget. On January 19, 1995, the county stated in writing that a budget would not be imposed on the district until March 1, 1995. The county also stated in writing: "Salary rollbacks must be implemented and the costs of step and column increases eliminated from the budget to the extent that

was proposed by the district in its September budget (district estimate = $4.3 million)."

The petition alleged the county and the district were aware of certain terms of the collective bargaining agreement. Under those provisions, the district would be able to unilaterally implement its proposed freeze of step/column movement and a 5.3 percent salary rollback after the fact-finding report was issued if the impasse still existed. The unions asserted the county delayed imposing a budget until after the factfinding report was issued to give the district the opportunity to unilaterally implement the freeze and salary rollback. The unions alleged the county acted arbitrarily and capriciously in providing for the freeze and salary rollbacks without proposing the savings elsewhere in the budget. The unions further alleged the county refused to allow the district to budget any of almost $1 million of Medicare/Medi-Cal reimbursements owing for services. This money could have been paid to the district. However, the petition alleged the county advised other districts they may budget 90 percent of the reimbursements. The county permitted the district to employ new persons for the 1994-1995 school year at a cost of over $900,000.

The county answered the petition and filed points and authorities in opposition. In its response, the county denied, among other things, allegations it advised other school districts they could budget Medicare/Medi-Cal reimbursements due to the uncertainty of when and if they would be received. The county, it was alleged, had no control over the district's decision to hire new employees. In addition, the county argued the petition was moot. The county alleged it had complied with the mandate of the Education Code because: (1) the statutory time limits were out of its hands once the county notified the Superintendent of Public Instruction the September 1994 budget had been disapproved; (2) the county had no authority to develop a plan until it received notification from the Superintendent of Public Instruction the September 1994 budget had been disapproved; and (3) the county worked diligently with the Superintendent of Public Instruction and the governing board of the district in December 1994 and January 1995 to develop and adopt a budget. The county also argued: the unions omitted to name as an indispensable party the governing board of the district which was the sole entity with the authority to cut teacher salaries; the trial judge lacked authority to compel the county to exercise its discretion in a particular manner, specifically to order it to implement a budget which " 'recognize[d] the status quo as to teacher salaries' "; the unions failed to name other indispensable parties; and the unions failed to establish an abuse of discretion.

We will relate the relevant evidence later in the opinion. The trial court granted the petition and this timely appeal followed from the judgment ordering the peremptory writ to issue.

## III. *Discussion*

### A. *The Standard of Review*

■ Our Supreme Court has described the role of the courts and the remedy of mandamus as follows: "Mandamus will lie to compel a public official to perform an official act required by law. (Code Civ. Proc., § 1085.) Mandamus will not lie to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular manner. Mandamus may issue, however, to compel an official both to exercise his [or her] discretion (if he [or she] is required by law to do so) and to exercise it under a proper interpretation of the applicable law. [Citations.]" (*Common Cause* v. *Board of Supervisors* (1989) 49 Cal.3d 432, 442 [261 Cal.Rptr. 574, 777 P.2d 610]; accord *Santa Clara County Counsel Attys. Assn.* v. *Woodside* (1994) 7 Cal.4th 525, 539 [28 Cal.Rptr.2d 617, 869 P.2d 1142].) Mandamus will also lie to correct an abuse of discretion by an official acting in an administrative capacity. (*Common Cause* v. *Board of Supervisors, supra,* 49 Cal.3d at p. 442; *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 344, fn. 24 [124 Cal.Rptr. 513, 540 P.2d 609].) The trial court is to presume the decisions of the agency or public official which are subject to traditional mandamus review are correct. (*Lee* v. *Board of Civil Service Comrs.* (1990) 221 Cal.App.3d 103, 108 [270 Cal.Rptr. 47]; *Cosgrove* v. *County of Sacramento* (1967) 252 Cal.App.2d 45, 50-51 [59 Cal.Rptr. 919].)

■ The issues in this case are whether the county complied with its duty under Education Code[1] section 42127.3[2] to adopt a budget for the district and whether the trial court acted within its authority in issuing the

---

[1] All further statutory references are to the Education Code unless otherwise indicated.

[2] Section 42127.3 provides: "(a) If the budget review committee established pursuant to Sections 42127.1 and 42127.2 recommends approval of the school district budget, the county superintendent of schools shall accept the recommendation of the budget review committee and approve the budget. [¶] (b) If the budget review committee established pursuant to Sections 42127.1 and 42127.2 disapproves the school district budget, the school district governing board, not later than five working days after receipt of the report described in paragraph (2) of subdivision (b) of Section 42127.2, may submit a response to the Superintendent of Public Instruction, including any revisions to the adopted final budget and any other proposed actions to be taken as a result of the recommendations of the budget review committee. Based upon the recommendations of the budget review committee and any response to those recommendations provided by the governing board of the school district, the Superintendent of Public Instruction shall either approve or disapprove the budget. If the Superintendent of Public Instruction disapproves the budget, he or she shall notify the governing board of the school district in writing of the reasons for that disapproval and, for the remainder of the current fiscal year, the county superintendent of schools shall do the following as necessary: [¶] (1) Not later than November 30, develop and adopt, in consultation with the Superintendent of Public Instruction and the governing board of the school district, a fiscal plan and budget that will govern the district and will allow the district to meet

peremptory writ. More precisely, the question here is whether the trial court properly determined the county had a ministerial duty to develop and adopt a spending plan which did not recommend or include salary rollbacks and step/column freezes as a means to balance the budget. ▪ Citing extensive prior California decisional authority, the Court of Appeal for the Third Appellate District has held: "[It is a] fundamental proposition . . . that the adoption of a budget is a legislative function, and that under the 'separation of powers' principle which is fundamental to our form of government a court is generally without power to interfere in the budgetary process." (*County of Butte* v. *Superior Court* (1985) 176 Cal.App.3d 693, 698 [222 Cal.Rptr. 429].) Our Supreme Court described that doctrine in the context of judicial review of executive branch decisions in a nonconstitutional context as follows: "Of course, principles of comity and separation of powers place significant restraints on courts' authority to order or ratify acts normally

---

its financial obligations, both in the current fiscal year and with regard to the district's multiyear financial commitments. The Superintendent of Public Instruction may extend the date by which the county superintendent of schools is required to develop and adopt a fiscal plan and budget. The governing board of the school district shall govern the operation of the district for the current fiscal year in accordance with that adopted budget. [¶] (2) Cancel purchase orders, prohibit the issuance of nonsalary warrants, and otherwise stay or rescind any action that is inconsistent with the budget adopted pursuant to paragraph (1). The county superintendent of schools shall inform the governing board of the school district in writing of his or her justification for any exercise of authority under this paragraph. [¶] (3) Monitor and review the operation of the school district. [¶] (4) Determine the need for additional staff and may employ, subject to approval by the Superintendent of Public Instruction, short-term analytical assistance or expertise to validate financial information if the district staff does not have the expertise or staff. [¶] (5) Require the school district to encumber all contracts and other obligations, to prepare appropriate cash-flow analyses and monthly or quarterly budget revisions, and to appropriately record all receivables and payables. [¶] (6) Determine whether there are any financial problem areas and may employ, subject to approval by the Superintendent of Public Instruction, a certified public accounting firm to investigate financial problem areas. [¶] (7) Withhold compensation of the members of the governing board and the district superintendent for failure to provide requested financial information. A forfeiture may be appealed to the Superintendent of Public Instruction pursuant to subdivision (b) of Section 42127.6. [¶] (c) If, during the selection of the budget review committee or during the committee's review of the budget, an agreement is reached between the governing board of the school district and the county superintendent of schools, and the school district revises its budget to comply with this agreement, the county superintendent of schools shall approve the district budget and the budget review committee selection, or its review of the budget, shall be canceled. [¶] (d) The school district shall pay 75 percent and the county office of education shall pay 25 percent of the actual administrative expenses incurred pursuant to subdivision (b), or costs associated with improving the district's financial management practices. The Superintendent of Public Instruction shall develop, and distribute to affected school districts and county offices of education, advisory guidelines regarding the appropriate amount of any fees charged pursuant to this subdivision. [¶] (e) This section shall not be construed to authorize the county superintendent of schools to abrogate any provision of a collective bargaining agreement that was entered into by a school district prior to the date upon which the county superintendent of schools disapproved the budget of the school district pursuant to subdivision (b)."

committed to the discretion of other branches or officials. [Citations.] In particular, the separation of powers doctrine (Cal. Const., art. III, § 3) obliges the judiciary to respect the separate constitutional roles of the Executive and the Legislature." (*Butt* v. *State of California* (1992) 4 Cal.4th 668, 695 [15 Cal.Rptr.2d 480, 842 P.2d 1240]; *Mandel* v. *Myers* (1981) 29 Cal.3d 531, 540 [174 Cal.Rptr. 841, 629 P.2d 935].) Where the underlying act involves an exercise of discretionary power, mandamus may issue only when the action taken by the board is " ' "so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law." [Citations.]' " (*Los Angeles City etc. Employees Union* v. *Los Angeles City Bd. of Education* (1974) 12 Cal.3d 851, 856 [117 Cal.Rptr. 537, 528 P.2d 353]; *Sanders* v. *City of Los Angeles* (1970) 3 Cal.3d 252, 261 [90 Cal.Rptr. 169, 475 P.2d 201].) We conduct de novo review of the issue whether the various provisions of the Education Code imposed the duty found by the trial court to exist on the county and the superintendent. (*Greenwood Addition Homeowners Assn.* v. *City of San Marino* (1993) 14 Cal.App.4th 1360, 1367 [18 Cal.Rptr.2d 350]; *Rodriguez* v. *Solis* (1991) 1 Cal.App.4th 495, 502 [2 Cal.Rptr.2d 50].) ▮ For the reasons stated below, we conclude, based on the undisputed evidence, that the superintendent and the county did not act in a palpably unreasonable and arbitrary manner as to indicate an abuse of discretion as a matter of law.

### B.   *The Budget Process*

This case concerns whether the trial court properly ordered the county to adopt a budget which did not include salary rollbacks and step/column freezes. The entire budgetary process in this case is regulated by statute as set forth in section 42127 et seq. It begins with the requirement that a district governing board must adopt and submit its school budget for the subsequent fiscal year to the county superintendent for review on or before July 1. (§ 42127.)[3] Section 42127, subdivision (d) then requires the county superintendent to review and either approve or disapprove the budget by August 15,

---

[3]Section 42127 provides: "(a) On or before July 1 of each year, the governing board of each school district shall accomplish the following: [¶] (1) Hold a public hearing on the budget to be adopted for the subsequent fiscal year. The agenda for that hearing shall be posted at least 72 hours prior to the public hearing and shall include the location where the budget will be available for public inspection. [¶] (2) Adopt a budget. Not later than five days after that adoption or by July 1, whichever occurs first, the governing board shall file that budget with the county superintendent of schools. That budget, and supporting data, shall be maintained and made available for public review. If the governing board of the district does not want all or a portion of the property tax requirement levied for the purpose of making payments for the interest and redemption charges on indebtedness as described in paragraph (1) or (2) of subdivision (b) of Section 1 of Article XIII A of the California Constitution, the budget shall include a statement of the amount or portion for which a levy shall not be made. [¶] (b) The county superintendent of schools may accept changes in any statement included in the budget,

1994. If the budget is disapproved, the county may assign a fiscal expert to assist a school district with the disapproved budget. Also, the county may

pursuant to subdivision (a), of the amount or portion for which a property tax levy shall not be made. The county superintendent or the county auditor shall compute the actual amounts to be levied on the property tax rolls of the district for purposes that exceed apportionments to the district pursuant to Sections 95 to 100, inclusive, of the Revenue and Taxation Code. Each school district shall provide all data needed by the county superintendent or the county auditor to compute the amounts. On or before August 15, the county superintendent shall transmit the amounts so computed to the county auditor who shall compute the tax rates necessary to produce the amounts. On or before September 1, the county auditor shall submit the rate so computed to the board of supervisors for adoption. [¶] (c) The county superintendent of schools shall do all of the following: [¶] (1) Examine the adopted budget to determine whether it complies with the standards and criteria adopted by the State Board of Education pursuant to Section 33127 for application to final local educational agency budgets. The superintendent shall identify, if necessary, any technical corrections that must be made to bring the budget into compliance with those standards and criteria. [¶] (2) Determine whether the adopted budget will allow the district to meet its financial obligations during the fiscal year and is consistent with a financial plan that will enable the district to satisfy its multiyear financial commitments. [¶] (d) On or before August 15, the county superintendent of schools shall approve or disapprove the adopted budget for each school district. If, pursuant to the review conducted pursuant to subdivision (c), the superintendent determines that the adopted budget for a school district does not satisfy paragraph (1) or (2) of that subdivision, he or she shall disapprove the budget and, not later than August 15, transmit to the governing board of the school district, in writing, his or her recommendations regarding revision of the budget and the reasons for those recommendations. The county superintendent of schools may assign a fiscal adviser to assist the district to develop a budget in compliance with those revisions. In addition, the county superintendent of schools may appoint a committee to examine and comment on the superintendent's review and recommendations, subject to the requirement that the committee report its findings to the superintendent no later than August 20. [¶] (e) On or before September 8, the governing board of the school district shall revise the adopted budget to reflect changes in projected income or expenditures subsequent to July 1, and to include any response to the recommendations of the county superintendent of schools, shall adopt the revised budget, and shall file the revised budget with the county superintendent of schools. Prior to revising the budget, the governing board shall hold a public hearing regarding the proposed revisions, to be conducted in accordance with Section 42103. The revised budget, and supporting data, shall be maintained and made available for public review. [¶] (f) On or before September 22, the county superintendent of schools shall provide a list to the Superintendent of Public Instruction identifying all school districts for which budgets may be disapproved. [¶] (g) The county superintendent of schools shall examine the revised budget to determine whether it (1) complies with the standards and criteria adopted by the State Board of Education pursuant to Section 33127 for application to final local educational agency budgets, (2) allows the district to meet its financial obligations during the fiscal year, and (3) is consistent with a financial plan that will enable the district to satisfy its multi-year financial commitments, and, not later than October 8, shall approve or disapprove the revised budget. If the county superintendent of schools disapproves the budget, he or she shall call for the formation of a budget review committee pursuant to Section 42127.1. [¶] (h) Not later than October 8, the county superintendent of schools shall submit a report to the Superintendent of Public Instruction identifying all school districts for which budgets have been disapproved, including a copy of the written response transmitted to each of those districts pursuant to subdivision (d). [¶] (i) Notwithstanding any other provision of this section, the budget review for a school district shall be governed by paragraphs (1), (2), and

appoint a committee to assess its review of the budget disapproval and report its findings by August 20. (§ 42127, subd. (d).) Those findings are reported to the county.

By September 8, a school district's governing board must: revise the adopted budget to reflect any changes in projected income or expenditures subsequent to July 1; review and respond to the county's reasons for the disapproval of the adopted budget and its recommendations; and adopt and file the revised budget with the county. (§ 42127, subds. (e) and (i)(1).) If the county intends to disapprove the school district's budget, it must advise the Superintendent of Public Instruction by September 22. (§ 42127, subds. (f) and (i)(2).) The county is required to review the revised budget and approve or disapprove it in writing by October 8. (§ 42127, subds. (g) and (i)(3).) If the county disapproves the revised spending plan, a budget review committee consisting of three persons from a state list must be formed in accordance with sections 42127.1[4] and 42127.2.[5] (§ 42127, subd. (i)(3).) The county may also request the State Controller to conduct an audit of the fiscal

---

(3) of this subdivision, rather than by subdivisions (e) and (g), if the governing board of the school district so elects, and notifies the county superintendent in writing of that decision, not later than October 31 of the immediately preceding calendar year. On or before July 1, the governing board of a school district for which the budget review is governed by this subdivision, rather than by subdivisions (e) and (g), shall conduct a public hearing regarding its proposed budget in accordance with Section 42103. [¶] (1) In the event of the disapproval of the adopted budget of a school district pursuant to subdivision (d), on or before September 8, the governing board of the school district, in conjunction with the county superintendent of schools, shall review the superintendent's recommendations at a regular meeting of the governing board and respond to those recommendations. The response shall include any revisions to the adopted budget and other proposed actions to be taken, if any, as a result of those recommendations. [¶] (2) On or before September 22, the county superintendent of schools will provide a list to the Superintendent of Public Instruction identifying all school districts for which a budget may be tentatively disapproved. [¶] (3) Not later than October 8, after receiving the response required under paragraph (1), the county superintendent of schools shall review that response and either approve or disapprove the budget. If the county superintendent of schools disapproves the budget, he or she shall call for the formation of a budget review committee pursuant to Section 42127.1. [¶] (4) Not later than 45 days after the Governor signs the annual Budget Act, the school district shall make available for public review any revisions in revenues and expenditures that it has made to its budget to reflect the funding made available by that Budget Act. [¶] (j) Any school district for which the county board of education serves as the governing board is not subject to subdivisions (c) to (h), inclusive, but is governed instead by the budget procedures set forth in Section 1622."

[4]Section 42127.1 provides: "(a) Pursuant to subdivision (f) of Section 42127, upon the disapproval of a school district budget by the county superintendent, the county superintendent shall call for the formation of a budget review committee. [¶] (b) The budget review committee shall be composed of three persons selected by the governing board of the school district from a list of candidates provided to the governing board by the Superintendent of Public Instruction. The list of candidates shall be composed of persons who have expertise in the management of a school district or county office of education. Their experience shall include, but not be limited to, the fiscal and educational aspects of local educational agency management. [¶] (c) Notwithstanding subdivision (b) or any other provision of this article,

condition of the school district to assist the budget review committee. (§ 42127.2, subd. (e).)

By October 31, the budget review committee must review the spending plan and transmit its approval or disapproval to the Superintendent of Public Instruction, the county and the school district. (§ 42127.2, subd. (b).) If the budget review committee approves the budget, the county must accept the recommendation and approve the budget. (§ 42127.3, subd. (a).) If the budget review committee disapproves the budget, the school district has five days after receipt of the report to submit a response to the Superintendent of Public Instruction, including revisions and proposed actions. (§ 42127.3, subd. (b).) If the Superintendent of Public Instruction disapproves the budget, the school district must be notified of the reasons for the disapproval. (§ 42127.3, subd. (b).)

If the budget review committee and the Superintendent of Public Instruction both disapprove the budget, for the remainder of the current fiscal year, the county shall do any or all of following: (1) by November 30, develop and

with the approval of the Superintendent of Public Instruction and the governing board of the school district, the county superintendent of schools may select and convene a regional review committee, consisting of persons having the expertise described in that subdivision. The regional review committee shall operate in place of the budget review committee, in accordance with the provisions of this article governing budget review committees. [¶] (d) Members of the committee shall be reimbursed by the State Department of Education for their services and associated expenses while on official business at rates established by the State Board of Education."

[5]Section 42127.2 provides: "(a) The governing board of a school district shall, no later than five working days after the receipt of a candidate list from the Superintendent of Public Instruction pursuant to Section 42127.1, select a budget review committee, and the Superintendent of Public Instruction shall convene the committee no later than five working days following that selection. If the governing board fails to select a committee within the period of time permitted by this subdivision, the Superintendent of Public Instruction instead shall select and convene the budget review committee no later than 10 working days after the district's receipt of the candidate list. [¶] (b) No later than October 31, the budget review committee shall review the proposed budget of the district and the underlying fiscal policies of the district and transmit to the Superintendent of Public Instruction, the county superintendent of schools, and the governing board of the school district either of the following: [¶] (1) The recommendation that the school district budget be approved. [¶] (2) A report disapproving the school district budget and setting forth recommendations for revisions to the school district budget that would enable the district to meet its financial obligations both in the current fiscal year and with regard to the district's multi-year financial commitments. [¶] (c) The Superintendent of Public Instruction may extend the deadline set forth in subdivision (b) for a period of not more than 15 working days. [¶] (d) The Superintendent of Public Instruction shall establish criteria and procedures governing the performance by budget review committees of their duties under this section. [¶] (e) Upon request of the county superintendent of schools, the Controller's office may conduct an audit or review of the fiscal condition of the school district in order to assist a budget review committee or regional review committee for the purposes of this section."

adopt a fiscal plan and budget that will allow the school district to meet its financial obligations; (2) cancel purchase orders, prohibit the issuance of nonsalary warrants, and stay and rescind any actions that are inconsistent with the adopted budget; (3) monitor and review the school district's operations; (4) determine the need for and employ additional short-term analytical assistance or expertise; (5) require the school district to encumber all contracts and other obligations, to prepare appropriate cash flow analyses and periodic budget revisions, and to appropriately record all receivables and payables; (6) determine whether there are any financial problem areas and employ with the approval of the Superintendent of Public Instruction a certified public accountant to make the determination; and (7) withhold the compensation of the governing board and the superintendent of the school district for failure to provide requested financial information. (§ 42127.3, subd. (b)(1)-(7).) Until a budget is approved, the school district is required to operate on the lesser of either the last budget adopted or revised by the governing board for the prior fiscal year or the disapproved spending plan for the current fiscal year as adopted and revised by the board. (§ 42127.4.)[6]

The evidence presented by the parties established the following facts. On July 1, 1994, the district submitted a final budget for the school year 1994-1995 to the county for review. By a letter dated August 10, 1994, the superintendent informed the district its budget had been reviewed and disapproved. The county advised the district the budget was not approved because: it assumed approximately $3.5 million in salary reductions even though the reductions were still the subject on ongoing collective bargaining negotiations; it failed to include an estimated $1.2 million in step/column adjustments; it failed to provide for an estimated $4 million in potential penalties for alleged noncompliance findings identified in a review of the district's adult education program by state agencies; and it included an anticipated 12 percent increase in health and welfare costs without including an appropriation to cover the increase. On September 8, 1994, the district submitted a revised final budget to the county for review.

The county disapproved the revised budget by letter dated October 10, 1994. The letter stated the revised budget was disapproved because, although it contained some adjustments including documentation to show the 12 percent increase in health and welfare costs and the potential adult education penalties were no longer an issue, the spending plan continued to contain a

---

[6]Section 42127.4 provides: "Until a school district receives approval of its budget under this article, the school district shall continue to operate on the basis of whichever of the following budgets contains a lower total spending authority: [¶] (a) The last budget adopted or revised by the governing board of the school district for the prior fiscal year. [¶] (b) The unapproved budget for the current fiscal year, as adopted and revised by the governing board of the school district."

financial shortfall of over $5.5 million. The shortfall consisted of assumptions of certified salary rollbacks of 5.3 percent, totaling $4.1 million. Also, the shortfall included classified salary rollbacks of 2 percent, totaling $1.1 million which remained subject to collective bargaining agreements. It also consisted of an incorrect computation of $40,789 by the district of a required 2 percent reserve for economic uncertainties and a revenue limit overestimation of $304,610. The county called for the formation of a budget review committee. In a report dated November 15, 1994, the budget review committee disapproved the budget.

On December 13, 1994, after reviewing the budget review committee report, the Superintendent of Public Instruction sent a letter to the district disapproving the revised budget. In the letter, the Superintendent of Public Instruction acknowledged the statutory deadline of November 30, 1994, to have a fiscal plan and budget in place had passed. However, the letter urged the district to work with the county to develop a viable budget as quickly as possible. The county received a facsimile transmission of the letter on December 16, 1994, and immediately began an extensive review and analysis of the district's current fiscal situation. A complete recalculation of the budget was made in light of fiscal transactions that had occurred since the budget was originally adopted on September 8, 1994. The county consulted with the governing board of the district and developed a fiscal plan and budget for the 1994-1995 school year. In a letter accompanied with supporting documentation dated February 2, 1995, effective March 1, 1995, the county indicated it had adopted the budget for the district. The county further indicated it agreed with the governing board of the district and the budget review committee that salary rollbacks and step/column freezes were necessary and the most viable option to balance the 1994-1995 fiscal plan. Further, it was recognized that without the salary rollbacks and step/column freezes, the district would have to apply for an emergency state loan. As an alternative, the county noted that the district could "provide for compensating revenue enhancements or expenditure reductions in other areas of the budget."

Thus, before the county adopted the budget, it was subjected to a long and comprehensive process which consisted of several levels of review, hearings, reports, and recommendations to help resolve the district's financial condition. The evidence established and the unions do not dispute that the district's financial condition was "bleak." In fact, the budget review committee which considered both the short- and long-term financial condition of the district concluded it was in "bankruptcy mode." Further, if salary rollbacks and significant reductions were not made the district would face cash flow problems in early 1995. The report, which the county relied upon

in adopting the budget, found a number of problems with the proposed spending plan and with the operations of the district's financial matters. The report found the district operated with two unrestricted general fund expenditure budgets. First, there was an official budget. Also, there was a line item budget. The second spending plan included three negative line items to reduce expenditures by about $3,846,000 and was called the "salvage budget." With the salvage budget, proposed salary rollbacks and step/column freezes which were currently in negotiation for certified and classified staff, the spending plan was understated by $8,207,000. The report also found the following circumstances contributed to the negative financial condition of the district. Past enrollment projections did not anticipate or forecast a major decline in daily attendance which has been a factor in reduced revenue. For several years prior to the current budget, the district failed to initiate changes in expenditure patterns in order to balance revenues and expenditures and ensure financial stability. The district in the past had implemented projects and capital improvements on anticipated income which did not materialize. The certified bargaining unit had a salary schedule equal to the 99th percentile of Los Angeles County unified school districts and ranked as the 5th highest of all salary schedules in the State of California. Although administrators, and supervisors had step/column freezes and a salary rollback implemented for 1994-1995, the district was not able to look to certified salary and benefits as a source of expenditure savings for the preceding three years. This was so even though approximately 86 percent of the district's expenditure budget consists of salaries and benefits. The report stated: "During the past six years, the district has agreed to two multiyear employee contracts which have no re-openers and no 'deflator' clause for reduced state COLAs [(cost of living adjustments)] and/or increased deficits. These employee contracts have historically provided a COLA in excess of the state COLA for revenue limit." During the same period the district made a large number of reductions to the noncertified salary portion of the budget. For example, the report noted while the unions' members are among the highest paid in the state the unrestricted general fund per pupil allocation for instructional materials was below the statewide average. The schools typically did not spend their full entitlement during the year and the unspent funds were then used to balance the budget.

## C.  *The Trial Court Erred in Issuing the Writ*

First, the trial court erred in issuing the writ because the record shows that by the time of the hearing the county had in a letter and by documentation dated February 2, 1995, adopted a budget for the district. Thus, the issue of whether the county was required to adopt a budget, as a matter of law, had become moot because it had already complied with the duty imposed

on it by law. (Code Civ. Proc., § 1085; *Environmental Protection Information Center, Inc.* v. *Maxxam Corp.* (1992) 4 Cal.App.4th 1373, 1380 [6 Cal.Rptr.2d 665].) Furthermore, the unions have not cited any authority which supports their claim the issue is not moot because the February 2, 1995, action did not comply with section 42127.3 since it was not in the "form of a budget." The form and contents of the budget are governed by sections 42123 and 42126. Section 42123 provides: "Each budget shall be itemized to set forth the necessary revenues and expenditures in each fund to operate the public schools of the district as authorized by law and on forms prescribed by the Superintendent of Public Instruction." Section 42126 states: "Effective July 1, 1988, each budget shall be made on the number of forms and upon the blanks or in the format prescribed by the Superintendent of Public Instruction. It shall be the duty of the Superintendent of Public Instruction to prepare standard forms or a format necessary to show the budgeting items and comparisons required by this article. The required forms or format shall be furnished to the school district by the county superintendent of schools." The February 2, 1995, letter signed by the superintendent stated in part "[A]s discussed with the . . . governing board at the January 19, 1995, study session, I am, by the way of this letter, adopting a 1994-95 budget for [the district], based on the assumptions and requirements in the attached documentation, effective March 1, 1995." The letter further provided that the district must resubmit the budget "to the County Office, in J-200 format, by February 24, 1995, and [it] will become the district's official budget for fiscal year 1994-95." Thus, the letter reflected the superintendent adopted a budget and instructed the district to resubmit it to the county in the approved format by February 24, 1995, prior to the effective date of the spending plan. Nothing remained for the county to do under the circumstances. The county's actions were sufficient to comply with its statutory obligation. Accordingly, the trial court should not have ordered the county to do an act it had already completed.

Furthermore, there is no evidence in the record to support the unions' contention the county refused to timely enact a budget as a "stalling tactic" because the superintendent knew that if he failed to act within the statutory time, the salary rollbacks and step/column freezes could be imposed by the district as a matter of law. Although the budget review committee issued its report on November 15, 1994, which was before the county's November 30 deadline, the Superintendent of Public Instruction did not reject the budget until December 13, 1994. Pursuant to section 42127.3, the county was not authorized to act until the Superintendent of Public Instruction disapproved the budget. The record reflects the county immediately thereafter began to take steps to develop and adopt a budget for the district which culminated in the February 2, 1995, letter and supporting documentation adopting the spending plan for the 1994-1995 school year.

Second, the trial court erred in ordering the county to prepare a budget which did not include pay rollbacks and step/column freezes because the authority to set salary schedules did not rest with the county but with the governing board of the district pursuant to section 45022 which provides: "The governing board of any school district shall fix and order paid the compensation of persons in public school service requiring certification qualifications employed by the board unless otherwise prescribed by law." The governing board has the power to determine salary schedules of certified employees and the discretion to change or freeze salaries. (*Los Angeles City etc. Employees Union* v. *Los Angeles City Bd. of Education, supra,* 12 Cal.3d at p. 856; *Eastham* v. *Santa Clara Elementary Sch. Dist.* (1969) 270 Cal.App.2d 807, 809 [76 Cal.Rptr. 198].) The county had neither the authority to set salary schedules nor the discretion to change or freeze salaries. Therefore, the trial court should not have ordered the county to adopt a budget which included any salary schedules. Moreover, the county never imposed any salary rollbacks or step/column freezes but merely adopted a $129 million budget which included findings that the pay adjustments might be necessary in order for the district to: meet its financial obligations; avoid bankruptcy; and avoid the necessity of applying for an emergency loan from the state. The county also proposed alternative methods and areas for the district to cut expenses. It then ordered the district to submit a final budget which contained at its discretion the reductions in the budget to meet the obligations. Thus, contrary to the unions' claims, the county neither imposed a salary rollback nor step/column freezes. Rather, the county recommended the salary rollbacks and step freezes and/or any other means available to the district to balance the budget.

Third, the extensive record of the district's financial condition and the comprehensive and well-defined statutory scheme with its review processes established it acted within its discretion in adopting a budget for the district which included a recommendation for salary rollbacks and step/column freezes. It is certainly understandable the unions would like to have the rate of teacher salaries remain intact. However, this desire does not translate into a ministerial duty by the county not to recommend cuts in a manner which is violative of the union members' particular interests, i.e., having the county develop a budget which does not include a reference to salary rollbacks and/or step/column freezes as a means to balance the budget. The reality is that, in a time when a number of public agencies are experiencing problems meeting their financial obligations, the unions like so many other public employee bargaining units are not immune from the cutbacks these agencies may be eventually required to make. No one seriously disputes the district was facing grave economic problems. The severity of the problems required the formation of a budget review committee and eventually action by the

state and the county to ensure that the district met its obligations. Moreover, the decision to recommend salary rollbacks was made only after a well-documented and extensive examination of the district's short- and long-term financial condition. The process by which it is determined how the resources are to be allocated cannot be controlled by the courts or by one particular group such as a union which has an interest in how much of those resources are allocated to its members. (*County of Butte* v. *Superior Court, supra,* 176 Cal.App.3d at p. 698.) The county, like all public agencies charged with the responsibility of adopting a budget, must carefully consider and balance a number of other factors besides the level of the union members' salaries. The county is also required to and did consider among other things: the needs of the students, the needs of the public and community in general, the limited financial resources available to the district, and the need for the district to meet its financial obligations both in the short term and long term. Under such circumstances, it cannot be said the county's action was " ' "so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law." ' " (*Los Angeles City etc. Employees Union* v. *Los Angeles City Bd. of Education, supra,* 12 Cal.3d at p. 856.) Accordingly, the trial court should not have issued the writ.

## DISPOSITION

The judgment is reversed. Donald W. Ingwerson and the Los Angeles County Office of Education shall recover their costs on appeal jointly and severally from the California Teachers Association and the Montebello Teachers Association.

Grignon, J., and Godoy Perez, J., concurred.